**Mrs. Patsy Ruth WHITE,
Plaintiff-Appellant,**

v.

**DALLAS INDEPENDENT SCHOOL
DISTRICT, Defendant-Appellee.**

**No. 76–1990.**

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1978.

James C. Hill, Circuit Judge, with whom Gee and Fay, Circuit Judges, joined, filed an opinion concurring in part and dissenting in part.

Tjoflat, Circuit Judge, filed an opinion concurring in part and dissenting in part.

Edith L. James, Dallas, Tex., Joel G. Contreras, Mexican American Legal Defense, San Francisco, Cal., for plaintiff-appellant.

Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Raj K. Gupta, Atty., E. E. O. C., Washington, D. C., for amicus curiae.

Lee Smith, Charles W. Stuber, Dallas, Tex., for defendant-appellee.

Before BROWN, Chief Judge, TUTTLE, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

THORNBERRY, Circuit Judge:

■ In this case the *en banc* court must determine whether a Texas statute designating District and/or County Attorneys as the appropriate state or local officials to receive notice of an alleged unlawful employment practice, Title VII, 42 U.S.C. § 2000e–5, triggers that same section's requirement for exhaustion of state remedies prior to the initiation in federal district court of a sex discrimination in employment action.

Patsy Ruth White, a former Dallas Independent School District teacher, was employed as a permanent substitute teacher certified to teach grades one through five. In August 1972, Mrs. White, acting pursuant to the then-current Dallas ISD policy on pregnancy, informed the Superintendent of Schools that she was pregnant. Although Dallas ISD's written policy would not have permitted Mrs. White to begin employment that fall because her child's expected birth date was in November, Mrs. White was assigned to teach music and art at Harrell Budd Elementary. That assignment was terminated at the end of one day. Mrs. White alleges that she was terminated solely by reason of an impermissible school district policy on teacher pregnancy and that she has been unable to secure another teaching job since the date of termination.

In August 1973, Mrs. White filed sworn, written charges with the EEOC alleging denial of her rights under Title VII. In July 1974 and again in January of 1975, she was advised that the EEOC had made a determination that reasonable cause to believe Title VII had been violated existed. In July of 1975, the EEOC advised Mrs. White that it had been unable to secure compliance within the statutory time limit and that while the commission would not institute action itself, she was entitled to sue in federal district court within ninety days from the receipt of the letter.

Mrs. White then filed the present suit relying upon Title VII sex-based discrimination and additionally upon 42 U.S.C. § 1983 and seeking an injunction against the Dallas ISD's further use of its maternity leave policy as well as an award of reinstatement and back pay. The district court dismissed the suit for want of jurisdiction because the plaintiff, Mrs. White, had failed to exhaust her state remedies under Tex.Rev.Civ.Stat. Ann. Art. 6252–16. It also ruled that Section 1983 jurisdiction was not available to Mrs. White because the school district was not a "person" within the meaning of that statute. A panel of this court upheld the school district's contentions that Mrs. White had failed to exhaust her state remedies. We granted an en banc hearing to resolve that issue and to decide whether a statutory interpretation generally requiring deferral necessarily means that Mrs. White's case must be dismissed.

I. Exhaustion of State Remedies

■ The requirement for exhaustion of state remedies is set out in Section 706(c) of Title VII:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . . .

42 U.S.C. § 2000e–5(c). The statute on its face sets out three requirements. The practice alleged must violate the federal law, Title VII; it must also violate a state or

local law prohibiting the practice alleged; the state must have set up some mechanism to deal with the violation. That last requirement is fulfilled if the state has either established a state or local authority or authorized an existing state or local authority that is empowered to do one of three things: to grant relief from the practice; to seek relief from the practice; or to institute criminal proceedings with respect to the practice. 42 U.S.C. 2000e–5(c).

Mrs. White alleged that she was refused employment solely on the basis of her pregnancy and that the refusal was sex-based discrimination within the meaning of Title VII and the Texas statute.. The Texas statute prohibits certain acts of gender-based discrimination by public officials or employees, including refusal to hire because of sex and discharge because of sex. Tex.Rev.Civ. Stat.Ann. Art. 6252–16(1).[1] The statute permits an aggrieved individual to institute an action for civil relief, including the granting of a temporary injunction or a restraining order, if the individual establishes that there is reasonable cause to believe that an officer or employee has committed a statutory violation. It also makes knowing violation of the statute a misdemeanor punishable by a fine of not more than one thousand dollars or one year in the county jail. Finally, it designates district and county attorneys as the state or local officials to receive notice under 42 U.S.C. § 2000e–5(c), *supra*. The Texas statute thus fulfills the final requirement of the federal statute, Section 706(c), by authorizing a state or local authority to institute criminal proceedings with respect to alleged unfair employment practices upon receipt of the notice of unfair practice.

Mrs. White has argued, and the EEOC has taken up the refrain, that a state must show some special concern beyond a general authorization to prosecute under general criminal jurisdiction to be regarded as a state with a deferral statute. She relies heavily upon *General Insurance Company*

1. *Article 6252–16 Discrimination against persons because of race, religion, color, sex or national origin*

Section 1. (a) No officer or employee of the state or of a political subdivision of the state, when acting or purporting to act in his official capacity, may:

(1) refuse to employ a person because of the person's race, religion, color, sex, or national origin;

(2) discharge a person from employment because of the person's race, religion, color, sex, or national origin;

(3) refuse to issue a license, permit, or certificate to a person because of the person's race, religion, color, sex or national origin;

(4) revoke or suspend the license, permit, or certificate of a person because of the person's race, religion, color, sex, or national origin;

(5) refuse to permit a person to use facilities open to the public and owned, operated, or managed by or on behalf of the state or a political subdivision of the state, because of the person's race, religion, color, sex, or national origin;

(6) refuse to permit a person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state, because of the person's race, religion, color, sex, or national origin;

(7) refuse to grant a benefit to, or impose an unreasonable burden upon, a person because of the person's race, religion, color, sex, or national origin;

(8) refuse to let a bid to a person because of the person's race, religion, color, sex, or national origin.

Section 2. Whenever a person has engaged, or there are reasonable grounds to believe that a person is about to engage in a act or practice prohibited by Section 1 of this Act, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved. In an action commenced under this Section, the court, in its discretion, may allow the prevailing party, other than the state, a reasonable attorney's fee as part of the costs, and the state is liable for costs the same as a private person.

Section 3. A person who knowingly violates a provision of this Act is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than One Thousand Dollars ($1,000) or by imprisonment in the county jail for not more than one year or by both.

Section 4. The District Attorneys and/or County Attorneys of this state are hereby designated as the appropriate state or local official to receive the notice of an alleged unlawful employment practice occurring in this state from the Equal Employment Opportunity Commission as provided for in Public Law 88–352, Title VII, Section 706(c); 78 Stat. 241 (42 U.S.C. § 2000e–5).

*of America v. Equal Employment Opportunity Commission*, 491 F.2d 133 (9 Cir. 1974). In that case the Ninth Circuit held that a Washington statute prohibiting wage discrimination based on sex and making that discrimination a misdemeanor was insufficient to require the federal agency to defer to a state authority. It rejected the argument that the state or county prosecutor might qualify as an appropriate agency through his general authority to institute criminal proceedings. The court said:

> What the section requires is a showing of such state concern in the specific area of unfair employment practices as to result in the establishment or authorizing of an agency to act in this area. If it had been intended that the general authority of the state attorney to prosecute crime should suffice, there would have been no need to provide that the state or local authority should be empowered to institute criminal proceedings. All that would have been necessary would have been to make the offense a crime.

We think that the Washington statute and that of Texas are distinguishable because the Texas district and county attorneys act in regard to unfair employment practices under Article 6252–16, not under their general authority, but under authority specifically given to them by the statute.

The statutory language makes clear that states may utilize existing structures for the redress of discrimination. That is the patent meaning of the statutory language "establish *or* authorize." [2] If a state chose

to establish a new agency or to expand an agency into new and unfamiliar territory, it would necessarily have to be specific in its delineation of authority. When, however, a state seeks to use an already existing structure, as in the present case, it is enough to inform the authority of its duty if the authority is designated to receive the required notice. Whole sections of Texas statutes are devoted to the required organization of the district and county attorney offices [3] and to the requirements for processing misdemeanor complaints. [4] It is unnecessary for them to be repeated in Article 6252–16.

Mrs. White argues that this power in the district and county attorneys is not sufficient because it does not afford her remedies "comparable to" those available through the EEOC. We disagree. The heart of the deferral requirement is that the state must prohibit the act of discrimination complained of. *Nueces County Hospital District v. E. E. O. C.*, 518 F.2d 895 (5 Cir. 1975). If the act is prohibited, deferral is required to permit the state to use the methods of reconciliation available under its laws. [5] The state need not provide all of the remedies available under Title VII. *Crosslin v. Mountain States Telephone and Telegraph Co.*, 422 F.2d 1028 (9 Cir. 1970), *cert. granted*, opin. vacated & remanded for further consid., 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971). Indeed, Section 706(b) itself speaks in terms of the ability of state authorities to grant or seek relief or to institute criminal proceedings, not in terms of the ultimate remedy. Id. at 1030.

---

**2.** "In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof . . . ." 42 U.S.C. § 2000e–5(c). The Congressional debates reveal that some states did have existing civil rights agencies at the time the 1964 Civil Rights Act was passed. See generally 110 Cong.Rec. 13081 (1964). Certainly those states would not have been required to establish new agencies. The use by some states of Labor Commissions or Industrial Relations Boards also indicates that

states were intended to be permitted the use of already existing machinery.

**3.** See generally Tex.Const. art. 5 § 21; Tex.Rev. Civ.Stat.Ann. Arts. 321–328 (District Attorneys), 330–331k (County Attorneys); 332–341; 3886a, 3912e–8, 3902.

**4.** Tex.Code Crim.Proc. Art. 21.01–21.24, 12.02.

**5.** [N]either the inadequacy of a state agency's authority to resolve an unlawful employment practice complaint nor its lack of effort permits the EEOC to ignore deferral if the action complained of is unlawful and the state agency has jurisdiction to hear or investigate the matter. *Bauman v. Union Oil Co.*, 400 F.Supp. 1021 (D.Cal.1975).

The Texas statute affords a complainant some but not all of the relief available under the federal statute. We have already discussed the potential misdemeanor liability. The Texas statute also provides that an alleged discriminatee may initiate an action for an injunction. Because attorney's fees and court costs are permitted against the state in such an action, we cannot say that it is a less effective method of investigation and, perhaps, conciliation than those afforded by EEOC procedures. To require deferral to a state for sixty days during which it may provide those forms of relief available under its law does not deprive a litigant of a later opportunity to seek in a federal forum relief not available in the state scheme. *Voutsis v. Union Carbide Corporation*, 452 F.2d 889 (2d Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972). Thus the availability of a criminal misdemeanor action under state law and procedure does not deprive a litigant of the opportunity to vindicate back pay and reinstatement claims in federal court once the deferral period has ended. Section 706(b) requires that the states be given an opportunity to handle the matter; it does not require a state to "clone" federal remedies.

The EEOC argued before the en banc court that if local prosecutors were authorities to which prior resort was contemplated under Section 706(c), that resort was not required in the present case because the Dallas District or County Attorney had not complied with EEOC regulations requiring that potential deferral authorities assert their entitlement to a prior opportunity to resolve discrimination complaints. *See* 29 C.F.R. § 1601.70. Before 1972 the Commission attempted to catalogue all laws that might require deferral and to assist charging parties with 706(c) requirements. After the expansion of Title VII coverage by the 1972 amendments, the Commission adopted regulations requiring that state authorities considering themselves 706(c) agencies identify themselves to the Commission and request designation as a deferral agency. We reject that contention. In the words of the act we need only find that the district or county attorneys are "State or local authorit[ies] [authorized] to institute criminal proceedings" with respect to the practice of which the charging party complains. *See Greenlow v. California Department of Benefit Payments,* 413 F.Supp. 420 (E.D.Cal. 1976).[6]

We hold that the Texas statute is sufficient to require sixty-day deferral to district and county attorneys to permit them to institute criminal proceedings under it [7] if the complained of acts are prohibited by the statute. *Nueces County Hospital District v. E. E. O. C., supra.* That determination does not necessarily permit dismissal of the plaintiff's case. Both Mrs. White and the EEOC argued that the deferral mistake, if any, should not be chargeable to 'Mrs. White and that she should not be penalized for the federal agency's failure to defer her complaint. The school district argues that this is not a case in which the charging party has been misled by the EEOC, and that responsibility for proper deferral under Section 706(c) is not placed on the Commission but is, by statute, placed upon the charging party. It also contends that deferral to the state agency is now impossible because the state's statute of limitations applicable to Art. 6252–16 has run.[8]

---

**6.** The school district alleged in its brief that hundreds of these complaints had been processed through the district attorney's office. Although nothing in the rather abbreviated record supports that contention, we note that if it were later shown to be true, there would be notice problems since the EEOC notified only the Texas governor's office of the change in regulation.

**7.** If the assertion of jurisdiction is a burden to particular district or county attorneys, they may waive jurisdiction and the EEOC will be free to proceed. See *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Barela v. United Nuclear Corporation,* 462 F.2d 149 (10 Cir. 1972); *Ostapowicz v. Johnson Bronze Co.,* 369 F.Supp. 522 (W.D.Pa.1973), vacated in part on other grounds, 541 F.2d 394; *EEOC v. Rinella and Rinella,* 401 F.Supp. 175 (D.Ill. 1975).

**8.** Under Tex.Code Crim.Pro. Art. 12.02, an indictment or information relating to a misdemeanor must be filed within two years from the alleged violation of the law.

■ We disagree with the school district's first proposition. The EEOC's own regulations, 29 C.F.R. 1601.13, 42 Fed.Reg. 55389–90 (October 14, 1977), require it to transmit copies of all charges filed with it to appropriate state or local agencies. That practice has received Supreme Court sanction. *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). At the time that Mrs. White's charge was filed, the EEOC was disputing whether the county or district attorneys were proper deferral agencies under Title VII. *See Nueces County Hospital District v. E. E. O. C.*, 371 F.Supp. 1126 (S.D.Tex.1974), *rev'd on other grounds*, 518 F.2d 895 (5 Cir. 1975). Despite the EEOC's knowledge that some defendants were contending that district and county attorneys were deferral authorities, it never informed Mrs. White to that effect. Instead the EEOC sent Mrs. White two separate letters which stated that "timeliness and *all other requirements* have been met." We think that the EEOC's failure to follow its own regulations sufficiently misled Mrs. White and that their mistakes should not redound to her detriment. *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333 (5 Cir. 1977).

■ The school district also argues that deferral is now impossible because the state statute of limitations has run. Because the offense under the Texas statute is a misdemeanor, the applicable statute of limitations is Tex.Code Crim.Pro. Art. 12.02. Article 12.02 states that an indictment or information relating to a misdemeanor must be filed within two years from the alleged violation of law. As the school district points out, more than five years have passed since Mrs. White's termination. We agree that when a state statute limits the time period within which a state agency may act, a federal court may not extend the state agency's authority to act on the charge. *Cook v. Mountain States Telephone & Telegraph Co.*, 397 F.Supp. 1217, 1222 (D.Ariz.1975). The misdemeanor involved here is a matter of state law and the federal court has no authority to expand liability for it.

■ On the other hand, a failure to invoke a state remedy need not bar other federal remedies provided by Title VII. *Davis v. Valley Distributing Company*, 522 F.2d 827 (9 Cir. 1975); *De Gideo v. Sperry Univac Co.*, 415 F.Supp. 227 (E.D.Pa.1976).[9] Title VII creates federal rights in a plaintiff which are not necessarily barred by the running of a state statute of limitations. *See Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364 (1974); *Jenkins v. United Gas Corporation*, 400 F.2d 28 (5 Cir. 1968) (back pay claims depended on state statute of limitations, but that statute of limitations was tolled by the filing of the EEOC complaint).[10] Other circuits have held that deferral to a state agency is not jurisdictional in the sense that a failure to defer deprives the federal court of power to act. *EEOC v. Wah Chang Albany Corporation*, 499 F.2d 187 (9 Cir. 1974); *Mitchell v. Mid-Continent Spring Company of Kentucky*, 466 F.2d 24 (6 Cir.), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 589 (1973); *Vigil v. American Telephone & Telegraph Co.*, 455 F.2d 1222 (10 Cir. 1972). We need not, today, make that broad a pronouncement.[11] Confronted with a charging party

9. In both cases the charging party's failure to file a complaint with the state agency within the limitation period provided by the state statute did not bar the federal remedy provided by Title VII.

10. Title VII and similar statutes create new causes of action that did not exist under common law or state statute. Although the federal causes of action under Title VII are governed by reference to state statutes of limitations, *United States v. Georgia Power Co.*, 474 F.2d 906 (5 Cir. 1973), those statutes are tolled by filing a federal complaint. To the extent that Mrs. White's federal remedies under Title VII are governed by state statutes of limitations, these statutes have been tolled by her timely filed EEOC complaint.

11. We have generally enforced only two jurisdictional prerequisites to suit in federal court under Title VII: (1) the filing of a complaint with the EEOC and (2) the receipt of the statutory notice of right to sue. *Reeb v. EEOC Atlanta*, 516 F.2d 924 (5 Cir. 1975); *Beverly v. Lone Star Lead Construction Corporation*, 437 F.2d 1136 (5 Cir. 1971). Nevertheless it was the clear intent of Congress that states be given

who has not engaged in dilatory tactics and who has been substantially misled by the EEOC's mistake of law, we are unwilling to bar her action in district court. We therefore remand the case to the district court, which should proceed to the rights of the parties under the federal statute. *Cf. Parker v. General Telephone Co. of the Northwest, Inc.,* 476 F.2d 595 (9 Cir. 1973); *Motorola, Inc. v. EEOC,* 460 F.2d 1245 (9 Cir. 1972). We also note that on remand the district court should consider whether Mrs. White's allegations, in her second amended petition, of retaliation would bring her claim within our holding in *Nueces County Hospital District v. E. E. O. C., supra,* in which we said that no deferral was required for claims of retaliation.

## II.  The § 1983 Claim

In the district court Mrs. White claimed that the school district's termination of her employment was a violation of § 1983. The panel held that the school district was, under Texas law, in the nature of a municipality, *Harkless v. Sweeney Independent School District,* 427 F.2d 319 (5 Cir. 1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971), and that municipalities are not persons subject to suit under § 1983. On remand, the district court should consider the plaintiff's § 1983 claim in light of *Monell v. Department of Social Services of the City of New York,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Vacated and remanded.

---

an opportunity to solve Title VII matters during a sixty-day period. Whether that intention makes deferral a jurisdictional requirement we do not decide.

1.  The same holding might have been expressed by saying that if the Commissioner finds that an employer ought not be allowed to assert a defense specifically provided by the Congress, the Commission can excise that defense from the law by erroneously advising the employee that it does not exist.

2.  Indeed, when I was "in the trenches" in the Northern District of Georgia, the same issue confronted that court in the case of *Kelly v. Southern Products Co.,* No. 19243, (N.D.Ga. June 14, 1975). In holding that an administrative agency could not amend the law to con-

---

JAMES C. HILL, Circuit Judge, with whom GEE and FAY, Circuit Judges, join, CONCURRING in part and DISSENTING in part.

I concur in that part of the majority opinion which holds that the Texas statute is sufficient to require the sixty-day deferral provided for in Section 706(c) of Title VII, but I respectfully dissent from that portion which asserts that "the EEOC's failure to follow its own regulations sufficiently misled Mrs. White and that their mistakes should not redound to her detriment."[1]  At 562.  The majority bases that assertion on the rule of *Zambuto v. American Telephone and Telegraph Co.,* 544 F.2d 1333 (5th Cir. 1977), where the EEOC's erroneous "two-tier letter" practice was found to have misled the plaintiff and, thus, held not to affect her right to judicial examination of her employer's conduct.

I feel compelled to note that my sentiments regarding *Zambuto* are aligned with those of Judge Fay:

As the trial judge in *Zambuto,* I reluctantly concluded that the 'seemingly authoritative statement by the agency presumed to know the most about these matters' was not sufficient to abrogate the clear limitations and time periods prescribed by Congress. Nothing has changed my mind.

*Page v. United States Industries, Inc.,* 556 F.2d 346, 355 (5th Cir. 1977) (Fay, J., concurring).[2]

---

form more nearly tc the agency's idea of what it should be, I observed:

A contrary opinion would permit the Agency (EEOC) to disregard the Congressional mandate that the employee shall have 90 days after being notified of the failure of conciliation in which to bring suit. In the view of this Court, Congress has considered the limitation matter and has enacted the law. Neither the Agency nor this Court is authorized to amend the law thus enacted by the Congress. Indeed, as originally enacted, only 30 days from notification was allowed for the bringing of suit. It is clear that officials of the Agency felt that the Congress had not acted wisely and, in *Whitfield v. Certain-Teed Products Corp.,* 389 F.Supp. 274 (E.D. Mo.1974) and *Harris v. Sherwood Medical*

Were this a proper case, our *en banc* court could reconsider *Zambuto*. Today, however, the majority broadens the Commission's presumed (and court approved) power to amend the law. All that a non-elected agency employee has to do to eliminate the requirement of Section 706(c) of Title VII from the law is to write a letter saying that its mandate does not apply in a given case. I do not endorse this invasion of the powers of the Congress by the Executive branch. Furthermore, as a result of this "back door legislating," the Court, in the name of equity, invokes the doctrine of estoppel against the defendant, who is now prohibited from asserting the plaintiff's failure to comply with the statute as a defense. The twist is that the resort to estoppel is not necessitated by the conduct of the defendant but rather by that of the *third* party, the EEOC, who would have the defendant sued.

The freedom of a dissenter permits what would be inappropriate idle speculation were it included in an opinion for the Court. Where else may *Zambuto* lead our Executive branch and lead us? If the agency's letter writer perceives that the district court having jurisdiction is overloaded with work (or, perhaps, manned by a judge he does not like), may he "advise" the employee that he has the "right to sue" in another district? Will this Court try the case if the agency "misleads" the plaintiff by telling him that he may file an original action in the Court of Appeals? I shall continue to throw my puny ounces onto the side of the scale that would deny the right of the judiciary, *In re Washington,* 544 F.2d 203, 210 (5th Cir. 1976) (dissenting opinion), *rev'd sub nom. Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (per curiam), or of the executive to invade the powers reserved to another of our three branches.

Thus, on this point, I respectfully dissent.

TJOFLAT, Circuit Judge, CONCURRING in part and DISSENTING in part.

I agree with Judge Hill that the majority, in broadening the sweep of *Zambuto v. American Telephone and Telegraph Co.,* 544 F.2d 1333 (5th Cir. 1977), has embarked on an unwise course, and I join in his remarks.

---

Industries, 386 F.Supp. 1149 (E.D.Mo.1974) there appears a recitation of attempts by the Agency to "correct" and extend the limitation period established by the Congress. Presumably, the administrative agency's dissatisfaction with the 30 day limitation was brought to the attention of the Congress before it amended the law in 1972. Pub.L. 92–261, § 4(a). Nevertheless, the Congress did not grant to the Agency the full right to provide whatever time it wished for a plaintiff to bring suit but merely extended the limitation to 90 days. The 'two-letter' approach taken by the Agency in this case is nothing more than a further attempt by the Administrators of the law to amend the law it administers so as to make the law more nearly what the Agency personnel felt that it ought to be instead of what the Congress has declared it to be. If our conduct is to be governed by laws constitutionally enacted by the people's elected representatives the Courts cannot sanction amendments by administrative agency personnel.

Plaintiff has also brought to the attention of the Court [a case where a District Court Judge in Illinois] denounced a similar practice of the Agency but, upon an equitable principle, permitted the plaintiff's suit to continue because the plaintiff had been misinformed by the Agency. By such a result this only encourages the Agency to continue its efforts to change the Congressional mandate. *Id,* slip op. at 3–4 (citations omitted).