Annie M. CARPENTER et al.

v.

STEPHEN F. AUSTIN STATE UNIVERSITY.

Civ. A. No. TY–74–214–CA.

United States District Court,
E. D. Texas,
Tyler Division.

July 31, 1979.

Richard Rafes, Asst. Atty. Gen., Austin, Tex., for the State of Texas, was assisted by Robert Provan, Staff Counsel, Nacogdoches, Tex., for Stephen F. Austin State University of Nacogdoches, Texas.

Larry Daves of Daves, McCabe & Crews, Tyler, Tex., for plaintiffs.

## MEMORANDUM OPINION

ROBERT M. PARKER, District Judge.

Three motions are before the Court which have been separately filed by the Defendant Stephen F. Austin State University. The Defendant's first motion calls for a decertification of the class, or alternatively a clarification of the class. The two remaining motions question the Court's jurisdiction under 42 U.S.C. §§ 1981, 1983 and 2000e.

## I.

### THE CLASS ISSUE

In the aftermath of *East Texas Motor Freight v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the Defendant challenges the certification of the Plaintiffs' class as ordered by William Wayne Justice, United States District Judge, on September 2, 1976. An evidentiary hearing preceded the certification, and Judge Justice subsequently filed a memorandum order which held that the named plaintiffs satisfied Article III standing requirements and Rule 23 prerequisites. The class had been defined as "past, present and prospective black and female employees of the University who have been denied or will be denied employment opportunities with the University since November 11, 1971."

Defendant, relying chiefly upon *Rodriquez*, attacks the order of September 2, 1976, on all fours. Claiming a lack of standing and a failure to meet the requirements of Rule 23(a), Defendant prays for decertification. Defendant's position with respect to standing and Rule 23(a) is based upon its reading of *Rodriquez*. Defendant maintains that *Rodriquez* requires the named plaintiffs to be qualified for each and every job classification they seek to represent. The University argues further that absolute congruence is required of the representatives to the class. Carrying its position to its conclusion, the Defendant urges the Court to start with the proposition that Plaintiffs Carpenter, Hunt, and Williams, as custodians, can only represent other custodians. The University even suggests that Carpenter and Hunt as black women are not adequate representatives of either the class of black custodians or the class of female custodians. If the class is narrowed to its most restrictive extreme, then the smaller congruent class fails to meet the requirements of Rule 23(a). In short, the Defendant argues that *Rodriquez* has foreclosed the maintenance of an "across the board" employment discrimination class action.

If the Defendant's premise based on its interpretation of *Rodriquez* fails, then its syllogistic reasoning regarding standing and Rule 23 likewise fails for lack of a correct premise. *Rodriquez* is a sparse opinion. To the extent that the unanimous Supreme Court enunciated a rule in *Rodriquez*, the parameters of the rule remain to be drawn. Neither the commentators[1] nor

---

1. For a variance of views, see Comment, 13 Harv.Civ. Rights-Civ. Lib. L.R. 175 (1978) and Connolly, Qualifying Title VII Class Action Discrimination Suits: A Defendant's Perspective, 9 St. Mary's L.J. 181 (1977).

the Courts[2] agree on its meaning. However, the Supreme Court was explicit in what *Rodriquez* did not decide or affect. Footnote 12 is particularly important to a resolution of the Defendant's motion. The note reads:

> Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims. Where no class is certified, however, and the class claims remain to be tried, the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed at the trial of the plaintiffs' individual claims.

*East Texas Motor Freight v. Rodriquez, supra,* 431 U.S. fn. 12, 406, 97 S.Ct. fn. 12, 1898. This is not the "different case" of which the Supreme Court wrote in Footnote 12, but, by the same token, the Court is not in the same posture to evaluate the class claims as was the *Rodriquez* Court.

The procedural history of *Rodriquez* is indispensable to a consideration of its holding. The *Rodriquez* class was never certified by the trial court. The Fifth Circuit certified the class on its own motion. It is the appellate court's certification of the class, despite the named plaintiffs' loss on the merits, which is reversed by a unanimous Supreme Court. Footnote 12 stresses the importance of the procedural posture of a certification decision to the facts which can be considered in the court's decision-making.

Defendant has tempted the Court to scrutinize the merits of the claims of Carpenter, Hunt and Williams. After scrutinizing the merits, the Defendant is convinced that the Court will find that the plaintiffs lack standing or fail to qualify as members of the class they purport to represent. As the Plaintiffs correctly point out, the Court is required at this stage in the proceedings to accept the allegations of the individual complainants as true. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). When the Court accepts the allegations that Carpenter, Hunt and Williams make regarding their individual claims as true, their membership in the class even under the *Rodriquez* requirement is satisfied. As a later decision of the en banc Fifth Circuit points out, the consideration of the merits of plaintiffs' claim in determining their class membership is only appropriate in cases in which the class has not been certified prior to trial on the merits. *Satterwhite v. City of Greenville,* 578 F.2d 987, 993 (5th Cir. 1978), cert. applied for, 47 U.S.L.W. 3465 (Jan. 1979).

*Satterwhite* also settles the question of whether or not class actions are maintainable as "across the board" challenges in employment discrimination suits. In Footnote 8 of the Fifth Circuit's opinion, the Court determines that *Rodriquez* does not alter the long-standing policy of the Fifth Circuit which favors "across the board" Title VII suits. *Satterwhite,* 993. A clearer statement of the effect of *Rodriquez* on the Fifth Circuit policy appears in a case which the Defendant cites as authority for its position requiring absolute congruence between the representative and the putative class. In challenging certain educational requirements of the Travenol Laboratories, the named plaintiffs were precluded from challenging a tenth grade rule since each of them had tenth grade educations. They simply were not members of that class.

**2.** For inconsistent treatment by the trial courts, see *Jamerson v. Board of Trustees of the University of Alabama,* 80 F.R.D. 744 (N.D.Ala. 1978) and *Adams v. Jefferson Davis Parish School Board,* 76 F.R.D. 621 (W.D.La.1977).

Yet, in the same opinion, the Court is explicit on the effects of *Rodriquez* on "across the board" class actions:

Second, Travenol maintains that plaintiffs' class action cannot properly extend to the employment practices applicable to analyst positions. In short, Travenol argues that the level of capability required for these positions is such that, even absent the college degree requirement, Plaintiffs would never be serious candidates for them. Even assuming that the named plaintiffs were not strictly affected by the college education requirement, this Court's policy regarding class actions in employment discrimination cases dictates that plaintiffs could properly challenge Travenol's college degree requirement. Plaintiffs' action is an "across the board" attack on unequal employment practices alleged to have been committed by Travenol pursuant to a policy of racial discrimination. As parties who have allegedly been aggrieved by some of those discriminatory practices, plaintiffs have demonstrated a sufficient nexus to enable them to represent other class members suffering from different practices motivated by the same policies.

*Payne v. Travenol Laboratories,* 565 F.2d 895, 900 (5th Cir. 1978). *Payne* and *Satterwhite* settle the post-*Rodriquez* question as to the future of the "across the board" class action in the Fifth Circuit. Therefore, Defendant's first premise regarding the sweep of *Rodriquez* is faulty.

With a determination of what *Rodriquez* clearly did not decide, the Court must now confront what effect, if any, *Rodriquez* has on the September 2, 1976, certification of this class. To assess the effects of *Rodriquez*, some factual background is in order. Jesse Rodriquez, Sadrach Perez and Modesto Herrera were employed by East Texas Motor Freight as city drivers. Each of them had applied to become line drivers. The company maintained a policy that seniority in city driving would not carry over into line driving, and as a result of the "no transfer" rule, the company refused to con-sider their applications. Rodriquez, Perez and Herrera brought a class action suit to challenge the "no transfer" rule, and also claimed to represent Mexican-Americans and Blacks who had been discriminatorily assigned in their initial hiring into city driving jobs.

After a trial on the merits, the individual named plaintiffs were found not to be qualified for the line-driving positions. In this respect and because of a consideration on the merits, prior to certification, they were found not to be members of the class they sought to represent, the class of city drivers qualified for line driving who could not be line drivers because of the "no transfer" rule. Prior to trial in an effort to simplify the issues to be tried, the named plaintiffs stipulated that they were not discriminatorily assigned in their initial hire. Therefore, the named plaintiffs could not represent the class of persons discriminatorily assigned since they stipulated that they did belong to that class.

To the extent that *Rodriquez* discusses class membership or nexus as it is often referred to in this circuit, it requires the class to be represented only by persons who:

. . . possess the same interest and suffer the same injury . . . .

*Rodriquez,* 431 U.S. 403, 97 S.Ct. 1896. Yet, as one commentator has noted, the Supreme Court never defined what it meant by the terms "interest" and "injury."[3] Since the Fifth Circuit has answered that "across the board" suits are still viable despite *Rodriquez,* this Court must answer that the named plaintiffs possess the same interest in non-discriminatory employment opportunities as does the class and have suffered, taking their allegations as true, the same racial discrimination as has the class. *Payne, supra; Satterwhite, supra.* Therefore, they are persons who possess the same interest and suffer the same injury as *Rodriquez* requires.

A further word regarding *Satterwhite* is in order. In *Satterwhite* as in *Rodriquez,* a post-merits consideration of the class is

---

3. Comment, 13 Harv. Civ. Rights-Civ. Lib. L.R. 175, 187 (1978).

made. Minda Satterwhite, after losing on the merits, appealed the non-certification of her class to the Fifth Circuit. Ms. Satterwhite complained that she had been denied employment on account of her sex. That claim was defeated due to a conflict of interest which would have disqualified an applicant, regardless of sex. Ms. Satterwhite had never been a city employee, and she had never shared any injury or discrimination in common with those who had been employed by the City. Ms. Satterwhite, after the merits had been decided, simply was not an adequate representative of the class.

Taking the Plaintiffs' allegations as true and having no new or contradictory evidence[4] established by the Defendant, the Court finds no reason to alter Judge Justice's previous findings. The class as certified fulfills the requirements of numerosity, typicality, commonality, and adequacy of representation. Without a change in the law or the facts, the Court's previous findings concerning standing and the maintenance of this suit as a class action will remain undisturbed. To the extent that the lawsuit has progressed under a tacit understanding by the parties that the class concerns wage and hourly employees, the class certification will be modified to reflect that understanding and be limited to those employees.

## II.

### THE JURISDICTIONAL ISSUES

▉ Relying upon *White v. Dallas Independent School District,* 566 F.2d 906 (5th Cir. 1978) and *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (March 5, 1979), the Defendant seeks a dismissal for want of jurisdiction. Under *White,* the Defendant raises the bar of a failure to exhaust state remedies in this Title VII cause of action. The *Quern* motion questions jurisdiction under 42 U.S.C. §§ 1981 and 1983 on the basis of the Eleventh Amendment. The Plaintiffs counter that the Court does

have jurisdiction under each statute, and that the *Quern* inquiry is unnecessary in the event jurisdiction is properly exercised under 42 U.S.C. § 2000e.

Although the *White* case is nearly a year old, the citators reveal that no other court in this circuit has had occasion to apply it, at least not in a reported opinion. Neither the parties in this case nor the Court has been able to uncover even an unreported decision which expounds upon *White.* Therefore, the Court is constrained within the language of *White* to determine its application to the case at bar.

Patsy Ruth White, a permanent substitute teacher, claimed that she was terminated solely as a result of an impermissible Dallas Independent School District policy on pregnancy. Mrs. White filed a charge with the EEOC. After several months, Mrs. White was informed that the EEOC had determined that there was probable cause to believe that impermissible sex discrimination existed. Unable to conciliate with the Dallas Independent School District, the EEOC issued Mrs. White a "Right to Sue" letter in July, 1975.

In the trial court, the Defendant raised the bar of failure to exhaust state remedies as proscribed in a Texas statute which required EEOC deferral of claims to district and county attorneys. Tex.Rev.Civ.Stat. Ann. art. 6252–16(1). The Honorable Robert M. Hill dismissed the suit for want of jurisdiction. Mrs. White appealed to the Fifth Circuit. A panel decision upheld the dismissal of the suit. *White v. Dallas Independent School District,* 566 F.2d 906 (5th Cir. 1978).

An en banc court reheard the matter and upheld the adequacy of the state remedy, but refused to apply it to Mrs. White as a bar to the maintenance of her action. *White II,* 581 F.2d 556, 562 (5th Cir. 1978). The precise holding of the en banc court states:

---

4. After reading the entire depositions of Plaintiffs Carpenter and Hunt, the Court is constrained to conclude that Defendant's characterizations of their testimony are not entirely complete.

Confronted with a charging party who has not engaged in dilatory tactics and who has been substantially misled by the EEOC's mistake of law, we are unwilling to bar her action in the district court. *White II, supra,* 562–563.

The holding of the Court appears to state the test to be applied to this case: (1) has the Plaintiff Carpenter engaged in dilatory tactics, and (2) has she been misled by the EEOC's mistake of law?

The Defendant has never suggested that Plaintiff Carpenter has been dilatory. Indeed, any dilatoriness in this cause has occurred in the discovery period and has not been attributable to the Plaintiffs. Therefore, based on a knowledge of the history of the suit, the Court is willing to find, and does find, that the Title VII Plaintiff Carpenter has not been guilty of any dilatory conduct.

Regarding the second prong of the *White* test, the Defendant would distinguish *White* from this case on the basis that Patsy Ruth White received two letters from the EEOC stating that she had complied with all requirements. The Defendant relies too heavily on this particular fact.

The Fifth Circuit seems to base its decision more on the EEOC's failure to follow its own rules and procedures which resulted in their mistake of law. *White,* 562. As the Court noted, 29 C.F.R. 1601.13, 42 Fed. Reg. 55389–90, require the EEOC, not the complaining party, to transmit copies of pending charges to the appropriate state or local agency. The reliance on this fact, rather than the existence of the letters, is apparent in the Court's own language:

> We think that the EEOC's failure to follow its own regulations sufficiently misled Mrs. White and that their mistakes should not redound to her detriment.

*White,* 562.

This Court agrees that the EEOC's blunder should not be visited against Annie Mae Carpenter.

The Fifth Circuit's refusal to meet the issue of whether a failure to exhaust state remedies is jurisdictional makes the task of the lower courts in this Circuit even more difficult. When the issue has been met, as the Fifth Circuit itself noted, other circuits have not barred Title VII actions for a plaintiff's failure to exhaust a state remedy. *EEOC v. Wah Chang Albany Corporation,* 409 F.2d 187 (9th Cir. 1974); *Mitchell v. Mid-Continent Spring Company of Kentucky,* 466 F.2d 24 (6th Cir.), cert. denied, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 589 (1973); *Vigil v. American Telephone & Telegraph Co.,* 455 F.2d 1222 (10th Cir. 1972). However, the Court did note in Footnote 11 that it had previously enforced only two jurisdictional prerequisites to suit: (1) the administrative remedy of filing a charge with the EEOC, and (2) the EEOC's issuance of a "Right to Sue" letter.

Therefore, the Court holds that Plaintiff Carpenter meets the test enunciated in *White II.* She has not been dilatory, and the EEOC's failure to follow its own procedures substantially misled her into thinking her suit was ripe for adjudication in this Court. For the same equitable policy reasons that the Fifth Circuit relied upon, this Court holds that Annie Mae Carpenter may maintain a Title VII suit on behalf of her class.[5]

The Eleventh Amendment cannot serve as a bar to an action under Title VII. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The University's Eleventh Amendment immunity would become relevant in a jurisdictional inquiry only if the claims of the Plaintiffs and their class fail under Title VII. Until such time, the Court will reserve ruling on the Eleventh Amendment issue as it relates to §§ 1981 and 1983. However, at this point, the Court notes that the *Quern* case has not been applied as a limit on the maintenance of a suit, but has rather been applied to bar certain forms of relief. *Citizens Energy*

---

5. Regarding the Defendant's position that each named plaintiff of a Title VII class is required to exhaust all remedies, state and federal, and have issued a "Right to Sue" letter, the University's authority for that position appears to have been superseded by *Albemarle Paper Co. v. Moody,* 422 U.S. 405, fn. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

*Coalition of Indiana v. Sendak,* 594 F.2d 1158 (7th Cir. 1979). The Defendant will be allowed to reassert its Eleventh Amendment claims at a later stage in the litigation.

### III.

Accordingly, the motion to decertify will be denied, but the class will be clarified in the manner herein described. The motion to dismiss the Title VII claims will be denied, and the motion to dismiss the §§ 1981 and 1983 claims will be held in abeyance pending failure of the Title VII claims. A separate order in conformity herewith is contemporaneously entered.