**Eleanor DUKE, Plaintiff-Appellant,**

v.

**UNIVERSITY OF TEXAS AT EL PASO, Defendant-Appellee.**

**No. 80–2094.**

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1981.

Rehearing and Rehearing En Banc Denied Jan. 26, 1982.

---

Hallmark, Villa & Keith, Antonio Cortez, El Paso, Tex., for plaintiff-appellant.

Sandra G. Bryan, Washington, D. C., amicus curiae for E.E.O.C.

Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., for defendant-appellee.

Before AINSWORTH, INGRAHAM and TATE, Circuit Judges.

AINSWORTH, Circuit Judge:

Dr. Eleanor Duke instituted this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that her employer, the University of Texas at El Paso (UTEP), discriminated against her in promotion, compensation and assignment because of her sex. Her appeal from an adverse summary judgment concerns her compliance with Title VII's requirement that employment discrimination charges be referred to qualifying state fair employment practice agencies before federal Equal Employment Opportunity Commission (EEOC) proceedings commence.

■ Section 706(b) of Title VII [1] "is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary resort to federal relief by victims of the discrimination." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Three circumstances must exist before the referral requirement is triggered: (1) The acts alleged must constitute an unlawful employment practice under section 703 of Title VII; (2) they must violate a state or local law; and (3) the state or locality must have established or authorized some agency to remedy the violation or to seek criminal penalties. *White v. Dallas Independent School District*, 581 F.2d 556, 558–59 (5th Cir. 1978) (en banc); 42 U.S.C. § 2000e–5(c). Complainants themselves need not determine when these requirements are satisfied and file with state authorities. In *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Supreme Court approved a "referral and deferral system" by which the EEOC refers complaints to the appropriate state agency when required. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980).

The unlawful employment practices alleged by Dr. Duke in this case occurred in Texas. Because the EEOC was contesting whether a Texas law, Vernon's Ann.Civ.St. Art. 6252–16,[2] triggered the deferral re-

1. Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(c), provides in pertinent part:

   In the case of an alleged unlawful employment practice occurring in a State, . . . which has a . . . law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such a practice . . ., no charge may be filed . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State . . . law, unless such proceedings have been earlier terminated.

2. Article 6252–16 provides in pertinent part:

   Section 1. (a) No officer or employee of the state or of a political subdivision of the state, when acting or purporting to act in his official capacity, may:

   (1) refuse to employ a person because of the person's race, religion, color, sex, or national origin;

   (2) discharge a person from employment because of the person's race, religion, color, sex, or national origin;

   (3) refuse to issue a license, permit, or certificate to a person because of the person's race, religion, color, sex, or national origin;

   (4) revoke or suspend the license, permit or certificate of a person because of the person's race, religion, color, sex, or national origin;

   (5) refuse to permit a person to use facilities open to the public and owned, operated, or managed by or on behalf of the state or a political subdivision of the state, because of the person's race, religion, color, sex, or national origin;

   (6) refuse to permit a person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state, because of the person's race, religion, color, sex, or national origin;

   (7) refuse to grant a benefit to, or impose an unreasonable burden upon, a person because of the person's race, religion, color, sex, or national origin;

   (8) refuse to let a bid to a person because of the person's race, religion, color, sex, or national origin.

   (b) The provisions of (a) of this Section do not apply to a public school official who is acting under a plan reasonably designed to end discriminatory school practices.

   Sec. 2. Whenever a person has engaged, or there are reasonable grounds to believe that a person is about to engage in an act or practice prohibited by Section 1 of this Act, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved. In an action commenced under this Section, the court, in its discretion, may allow the prevailing party, other than the state, a reasonable attorney's fee as part of the costs, and the state is liable for costs the same as a private person.

   . . . .

   Sec. 3. A person who knowingly violates a provision of this Act is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than One Thousand Dollars ($1,000) or by imprisonment in the county jail for not more than one year or by both.

   Sec. 4. The District Attorneys and/or County Attorneys of this state are hereby designated as the appropriate state or local official to receive the notice of an alleged unlawful employment practice occurring in this state from the Equal Employment Opportunity Commission as provided for in Public Law 88–352, Title VII, Section 706(c); 78 Stat. 241 (42 U.S.C. 2000e–5).

quirement when Dr. Duke lodged her charge in 1973, the matter was not first referred to state authorities. This court has since ruled that where Article 6252–16 prohibits the discriminatory act alleged, deferral is necessary, even though the state authorities that the Texas law empowers to act are district and county attorneys. *White v. Dallas Independent School District, supra,* 581 F.2d at 560–61; *see Nueces County Hospital District v. EEOC,* 518 F.2d 895 (5th Cir. 1975). After Dr. Duke received her right to sue letter and initiated this suit, 42 U.S.C. § 2000e–5(f)(1), UTEP moved to dismiss, asserting that her failure to refer to state authorities rendered her charge with the EEOC premature. Without the filing of a timely charge with the EEOC, UTEP argued, a subsequent action in district court was barred. After an evidentiary hearing, the court agreed and entered summary judgment against Dr. Duke.

■ *White* dictates the course of our review of the district court's decision, requiring that we construe the Texas statute to determine whether it forbids the discriminatory acts alleged.[3] If the unlawful employment practices charged by Dr. Duke are not within the ambit of the statute, then the failure to refer to state authorities is immaterial to her present action.

*The Texas Anti-Discrimination Statute*

■ Familiar principles of statutory construction guide our examination of Article 6252–16. A statute must be viewed in its entirety, to afford each part an effect harmonious with the whole and consistent with legislative objectives. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Payne v. Panama Canal Co.,* 607 F.2d 155, 164 (5th Cir. 1979); *United States v. Alexander,* 602 F.2d 1228, 1231 (5th Cir. 1979); *State v. Terrell,* 588 S.W.2d 784, 786 (Tex.1979); *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978); *Black v. American Bankers Insurance Co.,* 478

S.W.2d 434, 437 (Tex.1972). Section 1(a) of Article 6252–16 consists of eight subsections. Each subsection prohibits discriminatory acts in a specific realm of state function, such as hiring and firing employees, managing public facilities, letting bids and issuing licenses. The design and precise language of the section suggest that each subsection was intended by the legislature to be equal in scope. No terminal "catchall" provision was appended to extend the statute's reach to acts other than those enumerated. Significantly, Article 6252–16 falls far short of a general interdiction of discrimination by the state. The Texas legislature could have readily adopted a broader mandate of nondiscrimination in much briefer terms had that been its intention. Instead, it elected to pursue a more narrowly gauged aim of outlawing particular discriminatory practices in discrete areas of state operation. The statute must be construed in accord with this evident legislative objective.

■ The parties acknowledge that only three subsections of Article 6252–16 are relevant to this case. Subsections (a)(1) and (2) forbid state officials from discharging or refusing to hire a person because of his race, religion, color, sex or national origin. Conceding that these provisions are inapplicable to Dr. Duke's charges, UTEP urges that subsection (a)(7)'s ban on discriminatory refusals "to grant a benefit" be interpreted to encompass the unlawful employment practices alleged by Dr. Duke. Even if "benefit" were susceptible of such an interpretation standing alone, we cannot construe one subsection in isolation from the remainder of the statute. *Philbrook v. Glodgett, supra,* 421 U.S. at 713, 95 S.Ct. at 1898; *United States v. Alexander, supra,* 602 F.2d at 1231; *Barr v. Bernhard, supra,* 562 S.W.2d at 849; *Black v. American Bankers Insurance Co., supra,* 478 S.W.2d at 437. If the term "benefit" were construed to include public employment, then subsec-

---

3. The Texas courts have not construed the provisions of Article 6252–16 in dispute here. Certification to the Texas Supreme Court is not an option since Texas courts have no authority to

hear certified questions from federal courts. *See* Brown, *Fifth Circuit Certification—Federalism in Action,* 7 Cum.L.Rev. 455 (1977).

tion (a)(1)'s prohibition of discriminatory refusals to hire would be rendered superfluous by subsection (a)(7)'s ban on discriminatory refusals to grant a benefit. It is well established that a statute should be construed so that each of its provisions is given its full effect; interpretations which render parts of a statute inoperative or superfluous are to be avoided. *Weinberger v. Hynson, Westcott and Dunning, Inc.*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973); *In re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1362 (D.C.Cir. 1980); *Motor and Equipment Manufacturers Association, Inc. v. EPA*, 627 F.2d 1095, 1106 (D.C.Cir.1979). Under UTEP's expansive reading of "benefit," subsection (a)(7) would assume a dominance in relation to the remaining seven subsections inconsistent with the statute's apparent purpose of banning discrimination in eight independent areas of state activity.

Furthermore, subsections (a)(1) and (2) indicate that the Texas legislature was mindful of the ills of discrimination in public employment when it enacted Article 6252–16, but chose only to ban discriminatory discharge and refusal to hire, perhaps based on the belief that these discriminatory acts were of a more egregious nature than discrimination in pay, promotions and assignment, thereby warranting criminal penalties. Whatever the reasons for the legislative decision, the absence of a specific prohibition of the discriminatory acts alleged by Dr. Duke in the two subsections expressly devoted to employment discrimination supports an inference that the legislature did not intend to outlaw other acts of employment discrimination by submerging an implied ban elsewhere in the statute. Drawing an inference of an intent to exclude a particular result from the failure to expressly proscribe that result is the essence of the common law maxim "expressio unius est exclusio alterius," often applied as an aid in statutory construction. The maxim embodies a sensible insight into the customary manner in which language is used to communicate ideas. Simply stated, "[i]t expresses the learning of common experience that generally when people say one thing they do not mean something else." 2A C. Sands, *Statutes and Statutory Construction* § 47.24 (4th ed. 1973);· see *Andrus v. Glover Construction Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1085 (5th Cir. 1980); *Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668, 675 (5th Cir. 1978); *Bott v. American Hydrocarbon Corp.*, 458 F.2d 229, 233 (5th Cir. 1972); *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980). No indication is apparent here of a legislative intent that we should construe the statute otherwise.

◼ Reinforcing the view that Dr. Duke's allegations fall outside Article 6252–16 is the statute's penal character. Section 3 of the act establishes a criminal penalty for violations. By a long standing rule of statutory construction, buttressed by constitutional underpinnings,[4] penal statutes are to be strictly construed. Ambiguities concerning the ambit of criminal statutes should be resolved in favor of lenity. *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979); *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 375, 93 S.Ct. 1652, 1663, 36 L.Ed.2d 318 (1973); *United States v. Campos-Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971); *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931); *United States v. Scrimgeour*, 636 F.2d 1019, 1022 (5th Cir. 1981); *Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814 (Tex.1970). 3 C. Sands, *Statutes and Statutory Construction* § 59.03 (4th ed. 1973). An interpretation of the

---

4. Convictions obtained by virtue of unforseen judicial construction of criminal statutes violate the due process requirement that persons be provided with fair warning of criminalized conduct. *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979);

*Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *Rabe v. Washington*, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

word "benefit" broad enough to incorporate Dr. Duke's charges within the statute would clash with the policy of assuring fair warning of punishable conduct that underlies the rule of strict construction. *Dunn v. United States, supra,* 442 U.S. at 112, 99 S.Ct. at 2197; *Mourning v. Family Publications Service, Inc., supra,* 411 U.S. at 375, 93 S.Ct. at 1663.

UTEP urges that since section 2 of the act also authorizes aggrieved persons to seek injunctive relief, we should scrutinize section 1(a) by less demanding standards than we would a criminal statute. This argument might be persuasive if the criminal statute were but a small part of a broad regulatory scheme and free from ambiguity, as in *Mourning.* In that case the Supreme Court ruled that in such circumstances, strict construction was inappropriate. Where, as here, a genuine ambiguity exists in a single statute and a broad interpretation of the uncertain language would raise concerns regarding the adequacy of notice of forbidden conduct, the threat of criminal sanctions requires that the law be closely construed. We note further that without the criminal penalty provided by section 3, the remaining provisions of Article 6252–16 would be insufficient to trigger Title VII's referral requirement.

UTEP contends that if the Texas statute is held not to forbid the discriminatory acts alleged by Dr. Duke then by implication Title VII likewise would fail to proscribe these forms of discrimination. Such reasoning overlooks the substantial differences between the two statutes. Not only does section 703(a)(1) of Title VII, like Article 6252–16, outlaw discriminatory discharges and refusals to hire, but it also proscribes discrimination "with respect to ... compensation, terms, conditions, or privileges of employment ...." 42 U.S.C. § 2000e–2(a)(1). By its plain terms, Title VII's reach is far greater than the Texas statute's. *Nueces County Hospital District v. EEOC, supra,* 518 F.2d at 897 n.2.

From the analysis above, it seems reasonably clear that Dr. Duke's assertions of discriminatory pay, promotion and assignment practices lie beyond the reach of Article 6252–16. We conclude, therefore, that the district court erred in entering summary judgment against her and remand the case to permit her to proceed with her claim for relief.

REVERSED and REMANDED.