Nazario BARELA, Plaintiff-Appellee
(Cross-Appellant),

v.

UNITED NUCLEAR CORPORATION,
Defendant-Appellant (Cross-
Appellee).

Nos. 71-1262 and 71-1263.

United States Court of Appeals,
Tenth Circuit.

June 9, 1972.

Rehearing Denied July 20, 1972.

Jim Heidelberg, San Antonio, Tex. (Mario Obledo and Ed Idar, Jr., Mexican-American Legal Defense and Educational Fund, San Antonio, Tex., and Raymond G. Sanchez, Albuquerque, N. M., on the brief), for plaintiff-appellee (cross-appellant).

Leonard L. Pickering, Albuquerque, N. M., for defendant-appellant (cross-appellee).

Charles L. Reischel, Atty., EEOC (John de J. Pemberton, Jr., Acting Gen. Counsel, and Julia P. Cooper, Chief, Appellate, EEOC, on the brief), for EEOC as amicus curiae.

Before LEWIS, Chief Judge, DOYLE, Circuit Judge, and WINNER, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

In this employment discrimination case United Nuclear Corporation, defendant-appellant, seeks reversal of a money judgment against it in the amount of $4,719.55, which sum represents the amount found by the court to constitute plaintiff's lost wages. In its decision the district court found that appellee was a qualified applicant for an available job and further found that employment had been denied solely on the basis that appellee had filed a charge with the E.E.O.C. against a former employer. The court concluded in its opinion[1] that appellant had violated 42 U.S.C. § 2000e–3(a) which forbids discrimination resulting from an employee's opposition to any practice constituting an unlawful employment practice or stemming from his having made a charge, or having testified or participated in an investigation.[2]

On this appeal defendant-appellant, United Nuclear Corporation, contends that the jurisdictional requisites were not fulfilled under several sections of Title VII of the Civil Rights Act of 1964 and that the trial court's findings were not supported by the evidence.

Plaintiff-appellee has filed a cross-appeal questioning the trial court's ruling at the pretrial conference which struck the class action; the cross-appeal also seeks an injunction against United Nuclear restraining it from pursuing this conduct against other employees in the future. The trial court's award of attorney's fees is also attacked.

On November 9, 1967, plaintiff applied to United Nuclear for employment.

---

* This opinion has been delayed awaiting the Supreme Court's decision in Love v. Pullman, 404 U.S. 522, 92 S.Ct. 616, 30 L. Ed.2d 679 (1972).

1. Reported at 317 F.Supp. 1217 (D.N.M. 1970).

2. The text of § 2000e–3(a) is as follows:
 (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 It thus appears that job discrimination arising from making a charge to the E.E.O.C. is itself a violation of the Act.

The superintendent told him that a position as trip-rider[3] was open and referred him to the personnel manager, Ben Ferren, for the processing of his application. In the course of the plaintiff's interview the personnel manager ascertained that plaintiff had been recently employed by Kermac Nuclear Fuels which operated, as did the defendant, in the area of Grants, New Mexico. At this point Ferren left the room and contacted Kermac and was told that plaintiff had a Title VII charge pending against Kermac. As a result of this information Ferren told plaintiff that his application could not be processed. The evidence at this point was in conflict as to the exact conversation; Ferren stated that plaintiff was told that he could not be considered because the employment was necessarily temporary since he was prosecuting the claim, which sought reinstatement along with other relief, but plaintiff testified that no mention was made as to his rejection being based on his seeking temporary employment.

That afternoon, following a conference with the E.E.O.C. attorney, plaintiff returned and inquired of Ferren as to whether he could have the job if he dropped his charge against Kermac. The answer was that Ferren could not give plaintiff advice as to dropping the charge but that he would be eligible for hire "when his problems were settled there and he was no longer entangled in any manner."

Plaintiff thereupon filed a charge with the E.E.O.C. alleging refusal to hire arising from his having filed a charge against his former employer. A copy of this was sent to the New Mexico Fair Employment Commission, which agency returned it three days later stating that it did not intend to pursue the matter because of its heavy work load. This somewhat shortcut procedure was pursuant to an agreement between the New Mexico Labor Commissioner and the Area Director of E.E.O.C.

It was stipulated that plaintiff was unemployed when he contacted United Nuclear. The defense of United Nuclear was based on its assertion that it desired only permanent employees and that it had rejected plaintiff on that account. The trial court found that if the case were dependent on the conversation in the morning, that it might support the defendant's theory that the plaintiff was seeking temporary employment. The court went on to say, however, that the afternoon conversation made clear that plaintiff was seeking permanent employment, whereby defendant could no longer believe that if he were hired plaintiff would continue to prosecute his claim against Kerr-McGee.[4]

I.

JURISDICTIONAL REQUISITES

United Nuclear's contentions that the filing procedure was defective in that plaintiff did not personally file a charge with the New Mexico Commission and that the referral process failed to satisfy the spirit of the Act of Congress in that it was a sham are fully answered by the Supreme Court's recent decision in Love v. Pullman, 404 U.S. 522, 92 S. Ct. 616, 30 L.Ed.2d 679 (1972). The

3. Helper on a motor car in the mines.

4. The trial court concluded:
 The failure to further process plaintiff's application at that point, when he was admittedly qualified for the job and would as was admitted at trial, have been hired if he were not involved with Kerr-McGee in a pending case, amounts to a violation of 42 U.S. C.A. § 2000e–3(a). The evidence will support no other inference than that United Nuclear did not want the plaintiff only because of the charge against Kerr-McGee. The filing of such a charge is a protected right under the Civil Rights Act, and conduct infringing upon that right cannot be permitted. See Pettway v. American Cast Iron Pipe Co., 411 F.2d 998 (5th Cir. 1969) : Equal Employment Opportunity Commission v. United Ass'n. of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. of the United States and Canada, Local Union No. 189, 311 F.Supp. 464 (S.D.Ohio, 1970). 317 F. Supp. at 1218.

Supreme Court held that the filing procedure followed in that case was sufficient. It said:

> * * * Nothing in the Act suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself, nor is there any requirement that the complaint to the state agency be made in writing rather than by oral referral. Further, we cannot agree with the respondent's claim that the EEOC may not properly hold a complaint in "suspended animation," automatically filing it upon termination of the state proceedings.

> We see no reason why further action by the aggrieved party should be required. * * * To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. * * *

404 U.S. at 525–526, 92 S.Ct. at 618.

■ The New Mexico Commission in this case was apprised of the charge whereby it could take action if it chose to do so, and E.E.O.C. accepted the case for processing only after the state had had its opportunity to pursue it. Therefore, the spirit of 42 U.S.C. § 2000e–5(b) was satisfied.

There is an additional reason why the E.E.O.C. could have taken jurisdiction without resorting to the deferral provisions of § 2000e–5. New Mexico law did not recognize a violation based upon the activating of the E.E.O.C. process as such. Accordingly, this jurisdictional contention of United Nuclear is lacking in merit.

## II.

## SUFFICIENCY OF THE EVIDENCE

■■ Factually the case boils down to United Nuclear's agent, Ferren, telling the plaintiff that notwithstanding his qualifications for the vacancy his application could not be processed until there was no longer a dispute between him and Kerr-McGee. The trial court was faithful to the evidence and legally correct in recognizing that the filing of a charge is a protected right under the Act and that conduct infringing the right is a violation of the Act. Pettway v. American Cast Iron Pipe Company, 411 F.2d 998, 1005 (5th Cir. 1969), reh. den. 415 F.2d 1376 (1969). With respect to the asserted need for permanent employees and its relation to the need for refusing employment to Title VII claimants, the business necessity defense of United Nuclear was not established. See Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 29 L.Ed.2d 158 (1971).[5] In sum, the trial court's finding was not clearly erroneous. See Culpepper v. Reynolds Metals Company, 442 F.2d 1078, 1080 (5th Cir. 1971).

## III.

## THE CLASS ACTION ISSUE

The plaintiff's amended complaint alleged that defendant was maintaining a

---

5. See the comments of Mr. Chief Justice Burger in *Griggs* in which he said in part:

> * * * What is required by Congress is the removal of artificial, arbitrary and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification. 91 S.Ct. at 853.

> * * * The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited. 91 S.Ct. at 853.

> * * * But Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation. More than that, Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question. 91 S.Ct. at 854.

See Williams v. American Saint Gobain Corp., Okmulgee, Okl., 447 F.2d 561, 567 (10th Cir. 1971).

policy of practice of discrimination against employees and applicants who file charges with the E.E.O.C. On that basis plaintiff sought to represent a class composed of "all employees and prospective employees who are, have been, or might be refused employment on these grounds." Money damages were not sought. The prayer on behalf of the class was for an injunction prohibiting defendant from future discrimination together with a declaratory judgment stating that defendant had engaged in such a practice.

The district court's order striking the class action allegation did not give reasons other than that it was "not properly a class action." [6] Plaintiff now urges that this was error, and the E.E.O.C. has filed a brief in support of this cross-appeal.

The arguments advanced by United Nuclear in support of the trial court's action are 1) that the class action allegation must be included in the original charge filed with the E.E.O.C., and 2) that there was no class which the plaintiff could represent—that there was a failure to show that there had been other specific instances of similar illegal practices by defendant in the past or that others had made similar charges against the defendant.

### A.

### ALLEGED NECESSITY FOR A CLASS MEMBER TO HAVE FILED AN E.E.O.C. CHARGE

It was held in Oatis v. Crown Zellerbach Corporation, 398 F.2d 496, 498–499 (5th Cir. 1968) that once a basic complaint has been processed administratively, a class action can be maintained even though the class members had not processed their individual complaints through the E.E.O.C. The reasons given by the court were that the objects of Title VII are frequently realized through the class action in order to not only redress the individual complaint but to prevent present and future violations. Thus it was recognized that the court's jurisdiction to proceed with a class action was founded on the original charge and that other members were not required to pursue and exhaust administrative procedures as a prerequisite to being included in a class action.

A similar viewpoint was expressed by the Seventh Circuit in Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (1971), wherein the court cited with approval the pronouncement of Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969), which case had declared that such a suit is necessarily a class action designed to end the prohibited discrimination and that it was maintainable on behalf of all who had been damaged whether or not they had filed charges and joined in the suit.

Finally, to impose the requirement urged by United Nuclear would in our view be out of harmony with the Supreme Court's decision in Love v. Pullman, *supra.*

### B.

### DEFENDANT'S CONTENTION THAT A CLASS ACTION MUST FAIL UNLESS RULE 23 IS STRICTLY COMPLIED WITH

Admittedly Rule 23 is not a useful implement for the granting of injunctive relief in this kind of action because difficulty is encountered in satisfying the prerequisites set forth in subsection (a) and particularly the numerosity requirement of subsection (1). It is interesting to note, however, that part (b)(2)

---

6. The court's order read in full:

ORDER
(Filed September 28, 1970)

This matter having come on for consideration upon pre-trial conference, and the Court having concluded that the action may not properly proceed as a class action and that plaintiff may proceed individually; Now Therefore,

IT IS BY THE COURT ORDERED that the allegations of the complaint relating to plaintiff bringing this action as a class action pursuant to Fed.R. Civ.P. 23(b) be, and they hereby are, stricken, and the action shall proceed by plaintiff individually only.

of the rule has been employed and that there is some basis for using it.[7]

The Drafting Committee has commented that this particular subdivision is designed to be used to prevent conduct, and thus this sort of case differs from a class action in which damages are sought in behalf of numerous plaintiffs. The comments of the Drafting Committee make a distinction between the money damage case and the injunctive relief case as follows:

Subdivision (b) (2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages. Action or inaction is directed to a class within the meaning of this subdivision *even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.*

Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. (citations omitted). Subdivision (b) (2) is not limited to civil rights cases . . . . (emphasis added.)

Nevertheless, Rule 23 is not the best possible vehicle for the kind of relief which we now consider; its technical prerequisites are therefore often used as a shield whereby its efficacy as a sword is undermined. Many of the cases have suggested that the individual plaintiff seeking an injunction against a pervasive practice assumes the role of a private attorney general attempting to carry out the objectives of an act which is strongly affected by a public interest. See for example Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125, 130 (6th Cir. 1971); see also Jenkins v. United Gas Corporation, 400 F.2d 28, 32 (5th Cir. 1968); and see Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1197 (1971).

At least one decision has ruled that the group remedy is solely reachable through Rule 23 and that failure to satisfy each of its prerequisites prevents the class action. See Danner v. Phillips Petroleum Co., 447 F.2d 159, 164 (5th Cir. 1971).

A vast number of cases in addition to those cited above, however, emphasize that in the civil rights injunction case the court has the authority, Rule 23 notwithstanding, to fashion an injunctive remedy designed to uproot the policy or practice for the protection of the other employees. See Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125, 130 (6th Cir. 1971); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 428–429 (8th Cir. 1970); Hutchings v. United States Industries, Inc., 428 F.2d

---

7. The requirements under subsection (a) are that 1) the class be numerous as to make the joinder of all members impracticable, 2) there are common questions of law or fact, 3) the claims and defenses of the representative are typical of the class, and 4) the representative parties will do an adequate job of representing the class. In addition one of the requirements of subsection (b) must be met.

The one of consequence here is (b) (2) which provides for maintenance of the class action if the above prerequisites are satisfied and:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

303, 310 (5th Cir. 1970); Bowe v. Colgate-Palmolive Company, 416 F.2d 711, 715 (7th Cir. 1969). *Cf.* Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Carr v. Conoco Plastics, Inc., 423 F.2d 57, 65 (5th Cir. 1970); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124–1125 (5th Cir. 1969); Jenkins v. United Gas Corporation, 400 F.2d 28, 32, 34 (5th Cir. 1968); Oatis v. Crown Zellerbach Corporation, 398 F.2d 496, 499 (5th Cir. 1968). See also Hackett v. McGuire Brothers, Inc., 445 F.2d 442, 445 (3rd Cir. 1971).

 Contrary then to the contention of United Nuclear, the absence of prior or contemporary identifiable transactions did not constitute an insurmountable impediment to an action for injunction seeking to protect an unidentified class against future discriminatory acts.

## C.

## INADEQUACY OF THE EVIDENCE AT BAR

 The trial court's order striking the class action allegations was entered on September 28, 1970, following .the pretrial conference. This was but a month prior to the trial. The only existent evidence in support of the class action at the time was the deposition of Ferren which had been taken the previous February. In that deposition he had stated that the company policy during the period of his employment was to refuse to hire persons entangled with another company and that this was in order to prevent job hopping between mines. His examples of entanglement were persons who wanted a commitment of employment before quitting their present job and those who were striking against another company. He did admit, however, that he had placed defendant in the temporary category when he discovered that there was a Title VII charge pending. At the same time, he denied knowing about any other applicants who had not been employed because of pending E.E.O.C. charges.

At the trial there was very little added to Ferren's deposition, and as we view it the court's action could well have been predicated on the lack of evidence to establish a pervasive practice or policy of plant wide discrimination against persons who had filed such charges. Unquestionably it was essential for the plaintiff to have shown at the very least that the defendant had a present policy which posed a threat to future prospective employees, which policy was applicable on a plant wide basis, for in the absence of such evidence the court would be powerless to issue an injunction under Rule 23 or a private attorney general theory or even under a subsequently passed Act of Congress. The Equal Employment Opportunity Act of 1972 approved March 24, 1972 and, particularly, part (g) empowers a court to root out a practice by injunction or any other equitable relief deemed appropriate.[8] The plaintiff's evidence as to this was inadequate and fully justifies the trial court's ruling.

 We have carefully reviewed the trial court's award of attorney's fees at the rate of $25.00 per hour and have concluded that this order and judgment

---

8. 42 U.S.C. § 2000e–5(g), as amended March 24, 1972, Public Law 92–261, 92nd Congress, H.R. 1746, 86 Stat. 103, provides:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, *but is not limited to,* reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), *or any other equitable relief as the court deems appropriate.* * * * (amendments underscored)

did not constitute an abuse of discretion. See Culpepper v. Reynolds Metals Company, 442 F.2d 1078, 1081 (5 Cir. 1971).

The judgment of the district court is affirmed.