EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION,
Petitioner-Appellant,

v.

COMMERCIAL OFFICE PRODUCTS
COMPANY, Respondent-Appellee.

No. 85–2224.

United States Court of Appeals,
Tenth Circuit.

Oct. 15, 1986.

Rehearing Denied Dec. 23 1986.

582

Warren Bo Duplinsky, Atty., E.E.O.C., Washington, D.C. (Johnny J. Butler, Acting Gen. Counsel, Gwendolyn Young Reams, Acting Associate Gen. Counsel, and Vella Fink, Asst. Gen. Counsel, with him on briefs), for petitioner-appellant.

James L. Stone of Fairfield & Woods, Denver, Colo. (Brent T. Johnson of Fairfield & Woods, Denver, Colo., with him on briefs), for respondent-appellee.

Before McKAY, SETH and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Petitioner Equal Employment Opportunity Commission (EEOC) appeals from the district court's denial of a petition to enforce an administrative subpoena issued to respondent Commercial Office Products (Commercial). The two issues presented by this case are whether the EEOC can challenge the scope of the subpoena enforcement proceeding and whether the charge in this case was filed timely under the 300–day filing requirement of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–5. We hold that the EEOC cannot challenge the scope of the subpoena enforcement proceeding because it failed to raise that issue before the district court. We affirm the decision of the district court that the charge was not filed within the time limitation for filing Title VII charges with the EEOC.

Suann L. Leerssen was discharged by Commercial on June 10, 1983. She filed a charge with the EEOC on March 26, 1984—289 days after the discharge—alleging violations of Title VII of the Civil Rights Act of 1964. On March 30, 1984, the EEOC sent a copy of the charge and a charge transmittal form to the Colorado Civil Rights Division (CCRD). The form stated that the EEOC would initially process the charge pursuant to a worksharing agreement between it and the CCRD. The CCRD returned the charge transmittal form to the EEOC and indicated that the CCRD waived its right to initially process the charge. On April 4, 1984, the CCRD sent a form letter to Leerssen explaining that it had waived its right to initial processing but stating specifically that it still retained jurisdiction over her charge.

The EEOC began its investigation of the charge on March 26, 1984, the date that it initially received the charge. After Commercial refused to provide information relevant to the charge, the EEOC issued an administrative subpoena. Commercial refused to comply with the terms of the subpoena because it believed that Leerssen's charge was untimely filed and the EEOC therefore lacked jurisdiction over the charge. The EEOC filed this action seeking enforcement of the subpoena. The district court denied enforcement of the subpoena on the grounds that the filing of the Title VII charge was not timely.

## I. THE SCOPE OF THE SUBPOENA ENFORCEMENT PROCEEDING

■ The threshold issue that we address is whether the timeliness of the charge should have been determined in a subpoena enforcement proceeding. The district court relied on *Klausner v. Southern Oil Company of New York, Inc.*, 533 F.Supp. 1335 (N.D.N.Y.1982) (holding that the waiver of initial processing of a Title VII charge by a state agency is not a "termination" within the meaning of § 706(c) of Title VII) in denying enforcement of the subpoena. Reliance on *Klausner* indicates that the district court decided the timeliness issue in refusing to enforce the subpoena. The EEOC argues on appeal that an enforcement proceeding is not the appropriate stage for a determination of the timeliness of a Title VII charge.[1] We expressly decline to rule on the appropriate scope of the subpoena enforcement proceeding because the EEOC did not raise this argument in the district court. An appellate court generally will not consider an issue that a party has failed to raise below. *See Neu v. Grant*, 548 F.2d 281, 287 (10th Cir.1977). We find no exceptional circumstances justifying departure from this rule in this case. We therefore turn to the question of whether Leerssen's Title VII charge was timely filed within the limits specified in § 706, 42 U.S.C. § 2000e–5.

1. We are aware that a divided panel of the Fourth Circuit recently held that a subpoena enforcement proceeding is not the appropriate stage for a determination of the timeliness of a Title VII case. *EEOC v. Ocean City Police Dept.*, 787 F.2d 955 (4th Cir. 1986). The dissent in that case argued that an enforcement proceeding is an appropriate stage for such a determination, and there is language in *EEOC v. Shell Oil Company*, 466 U.S. 54, 65, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984) to support that conclusion.

## II. THE TIMELINESS OF THE TITLE VII CLAIM

The statutory scheme adopted by Congress in § 706 of Title VII, 42 U.S.C. § 2000e–5, displays an intent to apply different time limitations depending upon whether or not a state has an approved state civil rights enforcement agency. The statute mandates a process of preliminary deferral to the state agency in those states where such agencies exist. States are referred to as deferral or nondeferral states on the basis of whether or not a state has a civil rights enforcement agency. In nondeferral states a charge must be filed within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e). An exception to this 180–day limit applies in deferral states. Section 706(e) reads:

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier....

42 U.S.C. § 2000e–5(e). Section 706(e) must be read together with part of § 706(c):

> In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed ... before the expiration of sixty days after proceedings have been commenced under the State or local law,

unless such proceedings have been earlier terminated....

42 U.S.C. § 2000e–5(c).

The combination of these two subsections establishes a statutory scheme pursuant to which a claimant in a deferral state has 300 days to file a charge with the EEOC, but no such charge can be filed with the EEOC until the state agency has had up to sixty days to act on the charge. This scheme now governs in the forty-five states and nearly sixty local and territorial jurisdictions that have civil rights agencies approved under § 706.[2] 29 C.F.R. § 1601.-74 (1985). Thus, the exception has become the rule.

The federal courts have continued to struggle with the time limitations for filing a Title VII charge in deferral states. The frequency with which the courts confront this issue implies that complainants in deferral states who have failed to file a charge within 180 days after the alleged unlawful employment practice occurred are confused with respect to the applicable time limitations. The confusion experienced by many complainants defeats two important congressional goals: (1) the ease of filing civil rights charges by lay complainants and (2) the timely resolution of civil rights charges. *See Love v. Pullman, Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). The subversion of these goals invites legislative action. *See* Comment, *The Procedural Filing Requirements of Title VII in Deferral States: The Need for Legislative Action*, 43 Ohio St.L.J. 675 (1982). Lacking that, however, we turn to an analysis of this case based on the text of the statute, the legislative history, and the relevant judicial interpretation.

### A. The Requirements for an Initial Filing with the State Agency

■ The first issue that we address is whether Leerssen must have filed first with the CCRD rather than with the EEOC in order to have taken advantage of the 300–day exception to the 180–day time limi-

**2.** An agency that has been authorized to review unlawful employment practices pursu-ant to 42 U.S.C. § 2000e–5(c) is designated a "706 agency."

tation. We have interpreted the Supreme Court decision in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), to mean that when a complainant files a charge with the EEOC, the deferral of that charge by the EEOC is an initial filing in the state agency sufficient to invoke the 300–day time limitation. *Smith v. Oral Roberts Evangelistic Ass'n. Inc.,* 731 F.2d 684 (10th Cir.1984). *But see Dixon v. Westinghouse Electric Corp.,* 787 F.2d 943 (4th Cir.1986). As the Supreme Court said in *Love:* "Nothing in the Act [Title VII of the Civil Rights Act of 1964] suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself...." 404 U.S. at 525, 92 S.Ct. at 618 (footnote omitted). In this case the EEOC initiated the charge with the CCRD on behalf of Leerssen in the charge transmittal form that the EEOC sent to the state agency on March 30, 1984—the 292nd day.[3] Accordingly, Leerssen's charge was "initially instituted" with the CCRD pursuant to the requirements of § 706(e) and the 300–day limitation applies.

**B. The Meaning of "Filed" in § 706(e)**

■ Leerssen's charge is timely under § 706(e) only if it was "filed" with the EEOC within 300 days after the alleged unlawful employment practice occurred. An EEOC Procedural Regulation, 29 C.F.R. § 1601.13(a)(3), provides that a charge arising in a jurisdiction having a 706 agency that is apparently untimely under the applicable state or local statute of limitations is "filed" with the EEOC upon receipt by the EEOC. According to this view, a charge could be "filed" with the EEOC even though the state agency had exclusive jur-

isdiction to act on the charge. This regulation, however, ignores the clear requirement of the statute that *either* sixty days must elapse after initial institution of proceedings in the state *or* the state agency must have both commenced and terminated proceedings *before the complaint may be deemed to be filed with the EEOC.* 42 U.S.C. § 2000e–5(c). The referral of the charge from the EEOC to the state agency merely begins a period of "suspended animation" during which the state has a maximum of sixty days to resolve the charge before it can be filed officially with the EEOC. *Love,* 404 U.S. at 526, 92 S.Ct. at 618. As the Court explained in *Mohasco Corp. v. Silver,* 447 U.S. 807, 821, 100 S.Ct. 2486, 2494, 65 L.Ed.2d 532 (1980), "Congress chose to prohibit the filing of any federal charge until after state proceedings had been completed or until 60 days had passed, whichever came sooner." A contrary EEOC "'interpretation' of the statute cannot supersede the language chosen by Congress." *Id.* at 825, 100 S.Ct. at 2496 (footnote omitted). *See also General Electric Co. v. Gilbert,* 429 U.S. 125, 140–43, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976). The EEOC regulation cannot prevail here in the face of the clear statutory language of § 706(e).[4]

**C. The Requirements for a Timely Filing with the EEOC**

■ In *Mohasco,* the Supreme Court recognized that the combination of a 300–day filing limitation and a sixty-day deferral requirement means that "a complainant in a deferral State ... need only file his charge within 240 days of the alleged dis-

---

**3.** The fact that the filing with the state was past the state's 180–day limitation period does not nullify the filing with the CCRD. We have held that Title VII does not require that a charge be filed with the state or local agency or the EEOC within the time periods commanded by state law in order to preserve the right to timely file a charge within the extended federal time periods. *Smith v. Oral Roberts,* 731 F.2d at 684.

**4.** The court in *Seredinski v. Clifton Precision Products Co.,* 776 F.2d 56, 61–62 (3rd Cir. 1985) rejected a proposed reading of this regulation which would have held that "a charge is timely filed as long as it is received by the EEOC within 300 days from the date of the alleged violation," regardless of when proceedings commenced in the state agency. Instead, the court interpreted the regulation to require the EEOC to allow a state agency to consider a charge even though it is untimely under state law. *Id.* at 62.

criminatory employment practice in order to insure that his federal rights will be preserved." 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16. Any charges brought between the 240th day and the 300th day will be timely filed with the EEOC only if the state agency happens to complete its proceedings before the expiration of the sixty-day deferral period and prior to the 300th day. *Id.* The mandatory sixty-day deferral period in this case did not begin to run until the 289th day after the alleged unlawful employment practice, and it did not conclude until the 349th day, well past the 300–day limit in the statute. The charge could only have been timely filed with the EEOC if the state had terminated its proceedings prior to the 300th day. We now turn to the question of what a state agency must do to terminate its proceedings under § 706(c).

1. *The Meaning of "Terminated"*

■ The EEOC argues that a state agency "terminates" its proceedings within the meaning of § 706(c) when the state agency waives its right to initially process a charge, defers to the EEOC, and retains jurisdiction to act after the EEOC has completed its proceedings. The First Circuit

recently adopted this interpretation of "terminate" in *Isaac v. Harvard University,* 769 F.2d 817 (1st Cir.1985). We do not agree. Such a construction of "terminate" is contrary to its plain meaning, inconsistent with settled judicial interpretations of Title VII, and a subversion of the goals Congress sought to achieve by including a deferral requirement.

■ The plain and ordinary meaning of "terminate" involves the end or completion of an activity.[5] We find it difficult to understand how this meaning could in any way be controversial.[6] In the context of § 706(c), a state "terminates" its proceedings only when it completely surrenders its jurisdiction over a charge. Nor is "proceedings" ambiguous in this context.[7] The statute provides that proceedings under Title VII in a deferral state must be commenced in the state agency. The plain meaning of "proceedings" here refers to the actions that a state agency in a deferral state must take in resolving a charge brought under Title VII.

The legislative history and the judicial interpretation of Title VII explain why a state must unequivocally terminate its authority over a charge before the EEOC can

---

**5.** The Supreme Court in *Mohasco* twice paraphrased the termination of state proceedings requirement in § 706(c). First, it discussed a situation where "the State happens to *complete* its consideration of the charge prior to the end of the 300–day period." *Mohasco,* 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16 (emphasis added). The Court then recognized that a federal charge could not be filed "until after state proceedings had been *completed* or until 60 days had passed." *Id.* at 821, 100 S.Ct. at 2494 (emphasis added). This casual reference to the meaning of "terminate" in § 706(c) persuades us that the Court simply assumed what a lay reader of the provision would assume: "terminated" means completed.

**6.** The court in *Isaac* selected a definition that described "terminate" as a "temporary cessation." 769 F.2d at 821. Using this definition, a state agency could "terminate" its proceedings at one point, only to continue them in the future. We believe that this is a strained reading of the word "terminate." Additionally, we decline the invitation of *Isaac*

to engage in a battle concerning which dictionary and which alternative definition is appropriate. *See Isaac,* 769 F.2d at 821.

**7.** Again, the court in *Isaac* found that "proceedings" in § 706(c) referred to nothing more than the first stage of state agency proceedings on a complaint. 769 F.2d at 821. The Supreme Court has recognized that the word "proceedings" in Title VII "is used to refer to all the different types of proceedings in which the statute is enforced, state and federal, administrative and judicial." *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 62–63, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980). But nowhere in the statute or the legislative history are particular stages of the state administrative proceedings distinguished. The argument in *Isaac* is circular: "terminate" can mean temporary only if there are distinct state agency proceedings, but there is no need to distinguish among stages of the state agency proceedings unless each stage can be terminated independently.

commence proceedings.[8] Congress intended to require meaningful deferral to state agencies in order to provide for the local resolution of civil rights charges.[9] The deferral provisions were included for two purposes. First, Congress sought to encourage state and local agencies to resolve civil rights disputes. The local resolution of civil rights charges was believed to be a state responsibility.[10] The second reason for creating a deferral requirement was to prevent premature federal intervention.[11] The Supreme Court has relied on each of these purposes in interpreting § 706(c). In *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), the Court wrote:

> Congress intended through § 706(c) to screen from the federal courts those problems of civil rights that could be settled to the satisfaction of the grievant in a "voluntary and localized manner." See 110 Cong.Rec. 12725 (1964) (remarks of Sen. Humphrey). The section is intended to give state agencies a limited

opportunity to resolve problems of employment discrimination and thereby to make unnecessary resort to federal relief by victims of the discrimination.

Similarly, in *Mohasco*, the Court wrote: "The [legislative] history identifies only one reason for treating workers in deferral States differently from workers in other States: to give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated." 447 U.S. at 821, 100 S.Ct. at 2494 (footnote omitted).

The deferral requirement of § 706(c) accomplishes these purposes by prohibiting federal action until sixty days have passed or the state has conducted and concluded proceedings in a shorter period. Congress believed that sixty days was more than adequate for a state to complete a full investigation and determination of a case.[12] Federal resources were to be available to those state agencies that desired assistance in the processing of a charge. *See* 42

---

**8.** In turning to the legislative history, this court, like the Supreme Court, "emphasizes that the words of the statute are not ambiguous." *Mohasco*, 447 U.S. at 818, 100 S.Ct. at 2493. Here, as in *Mohasco*, "a literal reading of … [42 U.S.C. §§ 2000e–5(c) and (e)] gives full effect to the several policies reflected in the statute." *Id.* at 810, 100 S.Ct. at 2489.

**9.** The version of the Civil Rights Act passed by the House in 1964 did not include any deferral provisions. The House bill, however, met with strong opposition in the Senate. In an effort to break the deadlock during the floor debate over the measure, a bi-partisan group led by Senators Dirksen and Humphrey offered a group of amendments as a substitute for the House bill. The deferral provisions were the key to these amendments. 110 Cong.Rec. 11936 (1964).

**10.** Senator Humphrey in particular stressed the responsibility of state and local officials:

> Problems of civil rights will ultimately be settled at the community level.… Therefore, one of the improvements I see … is the inclusion within the words and text of the amendment of provision for the responsibility of local and State authorities to seek compliance with the law, wherever possible, through voluntary methods; and, if voluntary methods fail, to seek compliance

with the law through local enforcement. If voluntary methods and local enforcement should both fail, we then have the authority to seek compliance with the law through action by the Federal Government in the courts of law. This is a common-sense and just balance of Federal and State responsibility.

110 Cong.Rec. 11936 (1964). At a later point in the debate, Senator Humphrey said, "[I]t is perfectly proper to describe the substitute package as a 'States rights bill,' and, I may say, a 'States responsibilities bill.'" 110 Cong.Rec. 12725 (1964).

**11.** "We sought … to guarantee that these states … will be given every opportunity to employ their expertise and experience without premature interference by the Federal Government." 110 Cong.Rec. 12725 (1964) (statement of Sen. Humphrey).

**12.** Senator Dirksen noted that "many cases are disposed of [by state agencies] in a matter of days, and certainly not more than a few weeks." 110 Cong.Rec. 13087 (1964). The current backlog in many state agencies and the EEOC must cause officials today to look wistfully at the period that Senator Dirksen described. It is notable, however, that it was believed that state proceedings could easily be completed within the sixty-day deferral period.

U.S.C. § 2000e–8(b). But the unmistakable intention of Congress was that the state would *act* during its period of exclusive jurisdiction, and that the federal authorities would begin proceedings only if state proceedings failed to resolve the dispute.

### 2. The Effect of the Action by the State Agency

In the present case, Leerssen initially filed a charge with the EEOC. The EEOC then forwarded a copy of Leerssen's charge to the CCRD. The CCRD returned the charge processing form to the EEOC, waiving the CCRD's right to "initially process" the charge. We must decide whether this process is sufficient to constitute a commencement and termination of state proceedings that complies with the statutory procedure for shortening the sixty-day deferral period.

The EEOC and the CCRD were operating under a worksharing agreement which provided, *inter alia*, that if the claimant filed initially with the CCRD, the CCRD would process the charge. Conversely, the agreement provided that if the charge were lodged initially with the EEOC, the EEOC would process the claim. Thus, the sixty-day deferral period required by § 706(c) can be avoided if the complainant does not file initially with the state agency. The Supreme Court has recognized that Title VII is "a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love*, 404 U.S. at 527, 92 S.Ct. at 619. But the "statutory plan was not designed to give the worker in a deferral State the option of choosing between his state remedy and his federal remedy, nor indeed simply to allow him additional time in which to obtain state relief." *Mohasco*, 447 U.S. at 821, 100 S.Ct. at 2494. To allow the § 706(c) requirement of state deferral to turn upon the point of initial contact by a lay complainant subverts the statutory scheme requiring deferral.

In essence, the worksharing agreement created a reverse deferral, whereby the state defers to the EEOC. The EEOC suggests that worksharing agreements such as the one in this case may be effective and appropriate mechanisms for allocating investigatory and other enforcement responsibilities. These agreements cannot, however, become a means of circumventing the clear statutory framework and Congressional intent requiring deferral to state agencies. *See Bowsher v. Synar*, — U.S. ——, 106 S.Ct. 3181, 3193–94, 92 L.Ed.2d 583 (1986) ("the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to [law]") (quoting *INS v. Chadha*, 462 U.S. 919, 944, 103 S.Ct. 2764, 2780, 77 L.Ed.2d 317 [1983]). Worksharing agreements cannot serve as a substitute for deferral. The deferral period can be shortened only if the state takes final and unequivocal action commencing and terminating proceedings on the charge prior to the expiration of sixty days from the date on which the charge was filed with the state agency. We must look beyond the worksharing agreement in this case to the CCRD's response to the deferral by the EEOC in order to determine whether proceedings were commenced and terminated by the CCRD before the 300th day after the alleged employment discrimination practice occurred.[13]

---

**13.** The EEOC cites this court's decision in *Barela v. United Nuclear Corp.*, 462 F.2d 149 (10th Cir.1972) for the proposition that § 706(c) allows a state agency to waive its opportunity to resolve a complaint. *Barela*, to the contrary, supports our holding here. The charge in *Barela* was brought to the EEOC and referred to the state agency, "which agency returned it three days later stating that it did not intend to pursue the matter because of its heavy work load." *Barela*, 462 F.2d at 151. It appears that the state agen-cy in *Barela* made a decision to completely relinquish its authority to act on the charge at that point *or in the future*.

We do not here decide whether a state agency may waive the required sixty-day deferral period pursuant to a worksharing agreement. That question has been alluded to, but not decided, by the Supreme Court in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 471 n. 8, 102 S.Ct. 1883, 1892 n. 8, 72 L.Ed.2d 262 (1982) and by the Third Circuit in *Seredinski*, 776 F.2d at 61–62. We

 The charge transmittal form dated March 30, 1984 that the EEOC sent to the CCRD with respect to Leerssen's charge states that "a charge of employment discrimination [was] initially received by the EEOC."˙ This form contains a number of options for further action that apparently can be selected by the EEOC and the CCRD. The top portion of the form allows for three options: (1) the EEOC will initially process the charge pursuant to the worksharing agreement; (2) the 706 agency will initially process the charge pursuant to the worksharing agreement; or (3) the worksharing agreement does not determine which agency is to initially process the charge. All three options are predicated on the worksharing agreement. Significantly, the EEOC director is to sign this portion of the charge form, so the EEOC—not the CCRD—apparently selects the option tha will be followed. The box checked in this case reads: "Pursuant to the worksharing agreement, this charge is to be initially processed by the EEOC."

The bottom portion of the charge transmittal form allows the state agency to acknowledge receipt of the charge transmittal form and to indicate the intention of the state agency with respect to processing the charge. The bottom portion of the form in this case was apparently completed by a representative of the CCRD. The option chosen by the CCRD reads: "This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to

initially process the charge." The charge transmittal form was received by the CCRD on April 3, 1984. On April 4, 1984, the CCRD wrote to Leerssen that her case had been assigned a number for the CCRD files and that:

[T]he Civil Rights Division *will take no action* on your charge *until* the Equal Employment Opportunity Commission terminates its proceedings. The final findings and orders of the Equal Employment Opportunity Commission *may* be adopted by the Civil Rights Division with no further action taken by our Agency.

(emphasis added).

 This sequence of events shows that the CCRD simply acknowledged receipt of Leerssen's charge, waived initial processing, and retained jurisdiction reserving the right to act or to adopt the EEOC findings after the EEOC had terminated its proceedings. We cannot construe the ministerial acknowledgement of receipt of the charge transmittal form and the waiver of *"initial* processing" by the CCRD as a commencement and termination of proceedings that operates to reduce the sixty-day deferral period required by § 706(c). The CCRD did not finally and unequivocally terminate its authority over Leerssen's charge.[14] Accordingly, the CCRD had not terminated its proceedings, and the charge cannot be deemed to have been filed with the EEOC because the sixty-day deferral period had not expired.[15]

hold only that the CCRD did not finally and unequivocally relinquish its exclusive jurisdiction over Leerssen's charge and therefore did not "terminate" its proceedings.

14. On June 14, 1985, the CCRD sent Leerssen a letter stating that since the agency at no time had jurisdiction over her charge, it should not have been processed by the CCRD. Commercial argues that we should not consider this letter because it was not written until after the district court reached its decision in this case. We need not resolve this argument, for the letter does not affect the result in this case. Contrary to the position of the CCRD in the letter, the CCRD retained jurisdiction over Leerssen's charge pursuant to Rule 10.4(F)(2) of the Code of Colorado Regulations, 3 C.C.R. 701–1, which provides that the state time limits on charges bar

a claim only "where the respondent objects that the charge is not timely filed." No such objection was made by Commercial before the 300–day time limit expired in this case. The June 14th letter itself could be viewed as terminating state proceedings, but since it was not written until a year after the 300–day time limit expired, it did not terminate state proceedings in time to allow the EEOC to obtain jurisdiction.

15. The EEOC argues on appeal that the district court should have considered whether any equitable circumstances existed that would have supported a modification of the time limitations applying to Leerssen's charge. We recognize that the time limitations for filing a Title VII suit in federal court are not jurisdictional prerequisites for

Leerssen's charge was not received by the EEOC until the 289th day after the alleged unlawful employment practice. Section 706(c) requires that a charge alleging an unlawful employment practice in a deferral state be filed with the EEOC within 300 days of the alleged occurrence. The deferral period required by § 706(c) did not conclude until the 349th day, and the CCRD had not terminated its proceedings by the 300th day. Therefore, the charge was not timely filed with the EEOC. The judgment of the district court is therefore

AFFIRMED.

McKAY, Circuit Judge, dissenting:

The court correctly observes that:

The federal courts have continued to struggle with the time limitations for filing a Title VII charge in deferral states. The frequency with which the courts confront this issue implies that complainants in deferral states who have failed to file a charge within 180 days after the alleged unlawful employment practice occurred are confused with respect to the applicable time limitations.

Maj.Op. at 585. The court also recognizes that claimants, too, often experience confusion as to the applicable time limitations. *Id.* at 585. The frequent litigation and the confusion of claimants demonstrate to me not that claimants or their lawyers are ignorant, but rather that the statutory provisions are indisputably ambiguous. Congress' concern in enacting the deferral provisions was to encourage state and local agencies to resolve discrimination problems at the local level. Congress did not intent to confuse parties who claimed to be victims of discrimination, and Congress clearly did not intend the burden of these statutory ambiguities to fall on

these parties. Rather, Congress meant to liberalize the availability of redress for employment discrimination by providing two forums for the protection of victims. I do not believe that the ambiguity should be resolved by creating a trap for the unwary, as I believe the court has done in this case, or by creating a split in the circuits, thereby further intensifying the struggle and the confusion. I therefore must respectfully dissent.

The First Circuit in *Isaac v. Harvard University,* 769 F.2d 817 (1st Cir.1985), wrote a definitive opinion dealing with the timeliness issue. I believe their analysis is correct and do not find it necessary to repeat that analysis here. However, I do wish to emphasize two points. First, there can be no doubt that the statutory provision is ambiguous. Not only has the First Circuit in *Isaac* thoroughly demonstrated this, *id.* at 820–24, but the court here has also implicitly attested to the ambiguity by recitation of the continuing struggle in the litigated cases. Maj.Op. at 585. An abstract analysis of the meaning of the word "terminate" does not on its face remove the demonstrated ambiguity in the statute. Furthermore, the complexity of state involvement and activity suggests that one may not perfunctorily assign a meaning to the word "terminate" in this context. Even the majority found it necessary to interpret the word "terminate" to mean "unequivocally terminate [the state's] authority," adding words to the statute in order to reach its conclusion that the statute is unambiguous. *Id.* at 586, 587. The weight of experience and careful analysis support the conclusion that the statute is itself ambiguous.

Second, the agency involved in this case has interpreted the statute, and we are required to give deference to that interpre-

the court but rather are subject to equitable modification. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Leerssen, who is not a party in this action to enforce the administrative subpoena, can raise any equitable arguments that she might have in seeking to persuade a court to hear her case despite her failure to file a timely charge with the EEOC.

The EEOC, however, failed to argue to the district court that any equitable circumstances existed in this case that would have justified a departure from the time limitations and therefore allowed the enforcement of the administrative subpoena. We adhere to the rule that a party may not raise an issue on appeal that it did not raise before the district court. *Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977).

tation when the statute is ambiguous. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (court's function when Congress is silent is only to determine whether the agency interpretation is a permissible construction of the statute); *Rocky Mountain Oil and Gas Association v. Watt,* 696 F.2d 734 (10th Cir.1983) (court must defer to agency interpretation when statute is ambiguous). Since the EEOC's interpretation of the statute is clearly rational and consistent with the statute's purpose, we should defer to that interpretation. This was the final anchor in the First Circuit's argument.

While it is true that the First Circuit's interpretation would extend the filing time for some claimants, legislative history gives no indication that Congress intended otherwise. Indeed, as the majority seems to indicate, one of Congress' purpose in this enactment was to encourage effective state action. Maj.Op. at 587. But Congress did not intend thereby to deprive victims of discrimination access to the EEOC and to federal enforcement mechanisms. Nor is there any indication that Congress, in order to implement its purpose, intended to hold slavishly to the original 180–day provision. Such an intention would create a trap for claimants who take full advantage of state provisions before turning to the EEOC, which is their continuing right under the statute. One would have to attribute either congressional hostility to discrimination claimants or a lack of congressional concern for the inability of laypeople to understand this complex statute to suggest it intended such a result.

Even if the word "terminate" may have a clear meaning in isolation, this case amply demonstrates that it does not have a clear meaning in this context. How the claimant, or for that matter the attorney for the claimant, could know that the state agency's correspondence was not a "termination" of state proceedings is beyond me. In any event, since the EEOC statute in general, and these provisions in particular, are remedial, Congress clearly intended doubts to be resolved in favor of claimants.

The First Circuit's construction of the statute in *Isaac* is fully consistent with those notions. It is not only possible but particularly likely that Congress' dual purpose was to encourage states to resolve discrimination problems and to liberally protect the interests of victims of discrimination. These purposes are best served by construing doubts about timely filing in favor of claimants.

I would therefore reverse and join the First Circuit and all the district courts that have ruled on this issue except the Northern District of New York and the trial court in the instant case. *See Isaac,* 769 F.2d at 827–28; *Equal Employment Opportunity Commission v. Ocean City Police Department,* 617 F.Supp. 1133 (D.Md. 1985), *aff'd on other grounds,* 787 F.2d 955 (4th Cir.1986); *Thompson v. International Association of Machinists,* 580 F.Supp. 662 (D.D.C.1984); *Douglas v. Red Carpet Corp. of America,* 538 F.Supp. 1135 (E.D. Pa.1982); *Gunn v. Dow Chemical Co.,* 522 F.Supp. 1172 (S.D.Ind.1981); *Yeung v. Lockheed Missiles & Space Co.,* 504 F.Supp. 422 (N.D.Cal.1980); *Cattell v. Bob Frensley Ford, Inc.,* 505 F.Supp. 617 (M.D. Tenn.1980); *Morgan v. Sharon Pennsylvania Board of Education,* 445 F.Supp. 142 (W.D.Pa.1978). *But see Klausner v. Southern Oil Co.,* 533 F.Supp. 1335 (N.D. N.Y.1982) (waiver of initial processing by state under worksharing agreement did not amount to a "termination" of state proceedings). Even if one had doubts about the ambiguity analysis, it does not seem to me that clarification or protection of victims of discrimination can be served by splitting the circuits. At the very minimum, the decisions of the First Circuit and nearly all of the district courts plus the decision of the agency involved (the EEOC) are clearly rational and not inconsistent with either congressional language or manifest purpose. I would reverse the district court's decision.