# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00806-CV

**University of Texas and Ellen Wartella, Appellants**

**v.**

**Paula Poindexter, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. 265157, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

Paula Poindexter, appellee, sued the University of Texas at Austin and Ellen Wartella (collectively, "the University") for, among other things, employment discrimination based on disparate treatment, retaliation, and disparate impact. *See* Tex. Lab. Code Ann. §§ 21.051, .055, .122 (West 2006). The University filed a plea to the jurisdiction asserting in relevant part that Poindexter's retaliation and disparate-impact claims were barred because Poindexter had not timely raised them in an administrative complaint. *See id.* § 21.202(a). The plea also asserted that chapter 106 of the Texas Civil Practice and Remedies Code, which Poindexter had invoked as a basis for the trial court's jurisdiction, does not give trial courts jurisdiction over employment discrimination claims. The trial court granted the University's plea in part, but denied it as to Poindexter's retaliation, disparate-impact, and chapter 106 claims, and the University appealed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008). We will reverse the portion of the trial court's

order denying the plea as to retaliation, disparate impact, and chapter 106 jurisdiction and render judgment dismissing those claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1992, Poindexter, an African-American woman, worked for the University as a tenured associate professor of journalism. In 2000, Poindexter applied for promotion to full professor. The University reviewed Poindexter's application and denied it on December 18, 2000. Poindexter protested this denial within the University, and on May 2, 2001, she filed a letter of complaint with the Equal Employment Opportunity Commission (EEOC). Poindexter's May 2 letter stated, in part:

> I was recently denied a promotion to full professor because I am an African-American female and I wish to file a complaint with your office. In addition to denying my promotion, I have not received performance evaluations and merit increases commensurate with my performance. I have also been blocked from applying for and participating in professional and leadership opportunities. Finally, discriminatory tactics have been used to undermine my performance of professional responsibilities.

The EEOC responded to Poindexter's letter by requesting additional information, and on May 23, 2001, Poindexter sent the EEOC a follow-up letter.

On June 8, 2001, Poindexter perfected her complaint with the EEOC by submitting a verified charge form. *See* Labor Code § 21.201. The form prompted Poindexter to check boxes next to all bases of discrimination against her. Poindexter checked the box next to "Race" but did not check any of the boxes next to "Color," "Sex," "Retaliation," or "Other." The form also prompted Poindexter to fill in the earliest and latest dates of discrimination. Poindexter filled in

2

"12/18/2000" for both and did not check the "Continuing Action" box to indicate that the discrimination against her was ongoing. Finally, in the field requesting a narrative of "Particulars," Poindexter wrote the following:

> I have been denied a promotion. I have not received adequate pay increases. I have not been allowed to participate in professional and leadership opportunities. I believe I have been discriminated against because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The EEOC began investigating Poindexter's charge. As its internal Investigation Plan reveals, the EEOC believed that disparate treatment was Poindexter's only theory of discrimination.[1] The EEOC investigated Poindexter's complaint during the second half of 2001 and the first half of 2002, during which time both Poindexter and the University provided the EEOC with related information. On March 25, 2002, the EEOC issued Poindexter a Notice of Right to Sue the University. *See* Labor Code § 21.252.

After Poindexter received her Notice of Right to Sue, she visited the EEOC office to review her case file. Poindexter claims that while doing so she first realized that, contrary to her intention, her June 8, 2001 charge form had not listed retaliation as a basis of discrimination against her. Poindexter informed the EEOC of this omission, and after she completed an affidavit explaining the situation,[2] the EEOC allowed Poindexter to complete a second charge form.

---

[1] "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)), *cert. denied*, 549 U.S. 888 (2006).

[2] This affidavit is not in the record before this Court.

Poindexter filed her second charge form with the EEOC on May 7, 2002. This form received a different charge number from the first, indicating that the EEOC treated it as a new and separate charge rather than as an amendment to the first charge.[3] Like the first, the second charge form prompted Poindexter to check boxes next to all bases of discrimination against her. This time Poindexter checked only the box next to "Retaliation." Poindexter once again recorded December 18, 2000 as both the first and last date of discrimination against her, though she also checked the box next to "Continuing Action." Finally, in the field requesting a narrative of "Particulars," Poindexter wrote the following:

> In or around 1996, I complained to the President of the University that I was being discriminated against because of my race. I was denied promotion to full professor on December 18, 2000. I was not given adequate pay increases, and was not allowed to participate in professional and leadership opportunities. I believe that these actions were taken against me in retaliation for complaining of racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

On June 3, 2002, at Poindexter's request, the EEOC issued Poindexter a Notice of Right to Sue on her second complaint. Concomitantly, on June 25, 2002, the Texas Commission on Human Rights (TCHR) issued Poindexter a Notice of Right to File a Civil Action for each of

---

[3] Given the 180-day filing deadline for administrative charges, *see* Labor Code § 21.202, it is not clear why the EEOC allowed Poindexter to file an entirely new charge in May 2002 for discrimination that had a triggering date of December 18, 2000. In any event, as we discuss below, the record contains conclusive evidence that the May 2002 charge is time-barred. The EEOC's apparent acceptance of the charge does not compel a finding of timeliness. *See Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 553 (Tex. App.—San Antonio 2002, no pet.) (noting that agency action cannot create subject-matter jurisdiction).

4

her EEOC charges.[4]  Poindexter filed suit in August 2002 and amended her petition on October 25, 2004.

Poindexter's amended petition included causes of action for, among other things, disparate treatment on the basis of race, retaliation for her 1996 complaints about discrimination, and, unlike either of her EEOC charges, disparate impact of University policies on black employees. Poindexter asserted that the trial court had jurisdiction over these causes of action under both chapter 21 of the Texas Labor Code and chapter 106 of the Texas Civil Practice and Remedies Code.

In its plea to the jurisdiction, the University conceded that Poindexter had timely filed a disparate-treatment cause of action.  It argued, however, that the only instance of disparate treatment properly before the court was Poindexter's December 18, 2000 promotion denial.  The University also argued that Poindexter's retaliation and disparate-impact causes of action were time-barred because Poindexter had not filed them with the EEOC during the 180-day statutory time period.  Finally, the University argued that, regardless of whether any causes of action were time-barred, Poindexter's invocation of chapter 106 of the Texas Civil Practice and Remedies Code was ineffective, as that chapter does not apply to (and therefore does not give trial courts jurisdiction over) employment discrimination claims.

---

[4] At the times Poindexter filed her charges, the EEOC and the TCHR shared administrative responsibility for employment discrimination claims.  *See Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000).  Thus, filing a charge with the EEOC satisfied the filing requirements of Texas Labor Code chapter 21.  *See Burgmann Seals Am., Inc. v. Cadenhead*, 135 S.W.3d 854, 857 (Tex. App.—Houston 2004, pet. denied).  In 2003, the Texas Workforce Commission civil rights division replaced TCHR in the work-sharing relationship with the EEOC.  *See* Labor Code § 21.0015.

The court granted the University's plea as to claims of discrimination that occurred before December 18, 2000 but denied the plea in all other respects. The court did not issue findings of fact or conclusions of law in conjunction with its order. On appeal, the University contends that the court erred by denying the University's plea regarding retaliation, disparate impact, and chapter 106.[5]

## STANDARD OF REVIEW

Whether a court has subject matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A plea to the jurisdiction often may be determined solely from the pleadings and sometimes must be. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000). Such a determination is reviewed de novo. *Miranda*, 133 S.W.3d at 226. When a plea to the jurisdiction challenges the existence of jurisdictional facts, however, a court should consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id*. Such cases fall into two categories: (1) those in which the jurisdictional issue or facts do not substantially implicate the merits of the plaintiff's case, but rather are, for the most part, separate and distinct from the merits; and (2) those in which the jurisdictional issue or facts implicate the merits of the plaintiff's case. Courts treat these two categories of cases in markedly different ways.

---

[5] Poindexter argues that the chapter 106 issue is not ripe for appeal because the University's plea to the jurisdiction did not raise it. In fact, the University's plea did raise it; it incorporated by reference a chapter 106 argument from an earlier plea.

Where the jurisdictional issue or facts do *not* implicate the merits of the case, and the facts are disputed, the court—not the jury—must make the necessary fact findings to resolve the jurisdictional issue. *See id.* ("'Whether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case.'") (quoting *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir. 1997)). If, however, the facts relevant to jurisdiction are undisputed, the court should make the jurisdictional determination as a matter of law based solely on those undisputed facts. *Id.* at 228. Because a court should not proceed with a case over which it has no jurisdiction, it should make the jurisdictional determination as soon as practicable, but has discretion to defer the decision until the case has been more fully developed. *Id.* at 227.[6] On appeal, any fact findings made to resolve the jurisdictional issue may be challenged, as any other fact findings, for legal and factual sufficiency. This includes implied fact findings if written findings and conclusions are not issued. *Cf. BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

The second category consists of cases in which the jurisdictional issue or facts *do* implicate the merits of the plaintiff's case. Courts have used a number of phrases to describe this category of cases, including that the jurisdictional inquiry is "inextricably linked to the merits," is

_____

[6] Here, the trial court's order denying the plea to the jurisdiction did not indicate that the court was deferring its jurisdictional determination until the case was more fully developed. Nor did Poindexter urge a deferral of the issue in her response to the University's plea to the jurisdiction. Accordingly, because the trial court did not purport to exercise its discretion in this regard, we will not attempt to apply an abuse-of-discretion standard in reviewing the trial court's denial of portions of the plea. In any event, as discussed below, the relevant facts before the trial court were undisputed and conclusive, so fuller development of the case would have been pointless.

7

"inextricably bound to the merits," or "implicates the merits." Whatever label is used, the essential constituent is that many if not most of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits of her case. But "the proper function of a dilatory plea [such as a plea to the jurisdiction] does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on [the merits of] their case simply to establish jurisdiction." *Bland*, 34 S.W.3d at 555. Accordingly, where a jurisdictional issue and accompanying evidence implicate the merits of the plaintiff's case, the trial court does not act as a fact finder. Rather, the defendant is put to a burden very similar to that of a movant for summary judgment:

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder [at trial]. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Miranda*, 133 S.W.3d at 227-28. As with a summary judgment, the trial court's determination in such a case is a purely legal one and is, on appeal, reviewed de novo, with the appellate court indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id*. at 228.

To bring a suit for unlawful employment practices, a plaintiff must first have filed an administrative complaint with the EEOC or the TCHR "not later than the 180th day after the date the alleged unlawful employment practice occurred." *See* Labor Code § 21.202(a). The 180-day period begins to run "when the employee is informed of the allegedly discriminatory employment decision." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996) (citing

8

*Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).[7] When filing suit, a plaintiff "may raise only the specific issue made in the employee's administrative complaint and 'any kind of discrimination like or related to the charge's allegations.'" *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied) (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir.1993)). Timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit. *Specialty Retailers*, 933 S.W.2d at 492; *Texas Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied).

**DISCUSSION**

The jurisdictional evidence here does not implicate the merits of the plaintiff's case: the jurisdictional issue concerns the timing and content of Poindexter's communications with the EEOC, whereas the merits concern whether the University discriminated against Poindexter. Thus, the trial court was required to resolve the jurisdictional issue on the basis of facts that it found or that were undisputed. *See Miranda*, 133 S.W.3d at 226 (citing *Cameron*, 131 F.3d at 1170). As plaintiff, Poindexter bore the burden of establishing those facts. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The relevant jurisdictional facts were undisputed; accordingly, we review the trial court's decision de novo. *Miranda*, 133 S.W.3d at 227-28.

---

[7] Because chapter 21 of the Texas Labor Code effectuates federal anti-discrimination legislation, *see* Labor Code § 21.0001, Texas courts may look to federal precedent when interpreting it. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475-76 (Tex. 2001).

*Poindexter's Retaliation Claim*

In her May 7, 2002 EEOC charge form, Poindexter alleged that the University retaliated against her in three ways: by denying her a promotion on December 18, 2000; by denying her pay increases; and by not allowing her to participate in professional and leadership opportunities.[8] The May 7 form does not specify the dates on which the latter two types of retaliation allegedly occurred; in fact, as already mentioned, the form states both that discrimination occurred only on December 18, 2000 and that discrimination was "continuing." As discussed below, however, the law compels us to conclude that December 18, 2000 was the latest effective date on which Poindexter was alleging that the University retaliated against her.

A charge filed with the EEOC must specify the date(s) on which the allegedly unlawful employment practice(s) occurred. *See* Labor Code § 21.201(c)(2). Among other things, this allows the EEOC to calculate whether the charge's 180-day filing deadline has passed. An exception to the 180-day filing deadline, reflected in the "Continuing Action" box on the EEOC charge form, is for unlawful discrimination that "manifests itself over time, rather than [as] a series of discrete acts." *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41-42 (Tex. App.—Austin 1998, pet. denied). When such "continuing violation" discrimination occurs, the 180-day filing clock does not begin to run until one of the involved discriminatory events "should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Id.* at 42.

---

[8] Labor Code § 21.055 defines "retaliation" this way: "An employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."

The University's December 18, 2000 promotion decision was an event that should have alerted Poindexter to act to protect her rights—as indeed it did. Thus, even if that promotion decision was part of a "continuing violation," December 18, 2000 was the latest date on which Poindexter's 180-day clock could have started to run. If, on the other hand, Poindexter did not intend her May 7, 2002 charge form to allege a continuing violation, but rather intended it to allege a series of discrete events, then she was statutorily required to specify the date (and meet the separate 180-day filing deadline) of each discrete event. *See* Labor Code § 21.201(c)(2); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (each "discrete discriminatory act starts a new clock for filing charges alleging that act"). Her failure to do so deprives the trial court of jurisdiction over any events for which she did not specify dates. *See Specialty Retailers*, 933 S.W.2d at 492; *Dearing*, 150 S.W.3d at 459. Thus, whether Poindexter intended to allege a continuing violation or a series of discrete events, December 18, 2000 is the latest date on which the operative 180-day filing clock could have started to run. As a result, Poindexter's May 7, 2002 retaliation charge, filed almost a year and a half after December 18, 2000, was untimely.

Poindexter argues, however, that the "relation back" doctrine saves her retaliation charge. Under the "relation back" doctrine, an "amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission." Labor Code § 21.201(f). The key to this doctrine is that the "amendment"—an edifying choice of words—must relate to or arise from the subject matter of the original complaint. Poindexter's

11

retaliation allegation does not relate to or arise from the subject matter of her earlier disparate-treatment complaint.

"Generally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003).[9] Retaliation is a different legal theory from race-based discrimination. *Davis v. Educ. Serv. Cent.*, 62 S.W.3d 890, 894 (Tex. App.—Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA . . . ."); *Simms v. Oklahoma*, 165 F.3d 1321, 1327 (10th Cir. 1999) (amended charge alleging retaliation did not relate back to original charge alleging only race discrimination). Thus, Poindexter's May 7, 2002 retaliation charge does not relate back to her June 8, 2001 charge, which by its own terms alleged only racial discrimination.

Poindexter argues that even if her May 7, 2002 retaliation charge does not relate back to her June 8, 2001 disparate-treatment charge, it relates back to her May 2 and May 23, 2001 letters to the EEOC. These letters, she argues, allege retaliation. We disagree for two reasons.

First, the May letters simply do not allege retaliation; neither letter uses the word "retaliation" or any synonym thereof, neither letter discusses retaliation in form or substance, and neither letter even mentions the 1996 events for which the University allegedly retaliated.[10] Rather,

---

[9] An exception to this rule occurs when an employer retaliates against an employee for the very act of filing an employment discrimination claim. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 879 (5th Cir. 2003). In such instances, the employee may file a claim for retaliation that relates back to the filing date of the claim that provoked the retaliation. That is not what Poindexter alleges here.

[10] An attachment to Poindexter's May 23 letter, however, may mention these events. That attachment, a March 23, 2001 letter that Poindexter sent to the University provost to protest her promotion denial, states:

the May 2, 2001 letter states: "I was recently denied a promotion to full professor *because I am an African-American female*." (Emphasis added.) Likewise, the May 23, 2001 letter states: "I was denied a promotion to full professor of journalism at The University of Texas at Austin *because I am an African-American female*." (Emphasis added.) These statements plainly allege racial discrimination, not retaliation; thus, they do not support a later, untimely charge of retaliation. *See Bexar County v. Gant*, 70 S.W.3d 289, 292 (Tex. App.—San Antonio 2002, pet. denied) ("A lawsuit … is limited to claims made in the discrimination complaint and 'factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charges.'") (quoting *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

The contents of Poindexter's May 2001 letters are undisputed. Accordingly, whether those letters were adequate to allege retaliation, or could reasonably be expected to give rise to an investigation of retaliation, are questions of law. *See State ex rel. Dep't of Crim. Justice v. Vitapro Foods*, 8 S.W.3d 316, 323 (Tex. 1999) ("[W]hen the facts are undisputed, whether something is an

---

In 1996, I wrote a letter to former University of Texas President Bob Berdahl expressing my concern about misrepresentations and irregularities in the Journalism Department Chair selection process, but Dr. Berdahl failed to do anything about it. Because Dr. Berdahl failed to act then, many of the same types of problems have re-surfaced during the present promotion process.

It is not clear that the letter Poindexter references in this passage is the one that allegedly provoked retaliation; after all, this passage speaks of a letter that discussed "misrepresentations and irregularities," whereas Poindexter's May 7, 2002 EEOC charge form speaks of a letter that discussed racial discrimination. Nevertheless, even if this passage is referring to the 1996 letter that allegedly provoked retaliation, it still does not support Poindexter's contention that she alerted the EEOC to retaliation in May 2001. The passage above says nothing about retaliation; in fact, if anything, it indicates that Poindexter's 1996 letter produced no action by the University president.

13

agricultural commodity [under the relevant statute] is a question of law."); *Odessa Tex. Sheriff's Posse, Inc. v. Ector County*, 215 S.W.3d 458, 472 (Tex. App.—Eastland 2006, pet. denied) ("Because the notices' content is undisputed, their adequacy is a question of law."); *Rettberg v. Texas Dep't of Health*, 873 S.W.2d 408, 413 (Tex. App.—Austin 1994, no writ) ("Since the facts are undisputed as to the content of the notice, a determination of its adequacy is a question of law."); *see also Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) ("We review de novo the proper reach of a Title VII claim."); *Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) ("Whether the issue of Conner's 2002 non-promotion was within the scope of her EEOC charge is a question of law, which we review *de novo*.").

Poindexter's expert, Bill Hale, nevertheless avers that "the contents of [the May] letters are sufficiently specific to allege employment discrimination on the basis of race and retaliation." He also asserts that a "retaliation charge could reasonably be expected to grow out of" Poindexter's May correspondence. These assertions are, however, legal conclusions that do not constitute probative evidence. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003) ("A conclusory statement of an expert witness is insufficient to create a question of fact . . . ."). In any event, the record simply contains no evidence that supports Hale's assertions. As already discussed, Poindexter's correspondence nowhere mentions or suggests retaliation. Even the EEOC itself determined that Poindexter's complaint should trigger only a disparate-treatment investigation. We conclude as a matter of law that Poindexter's May 2001 letters did not allege retaliation and could not reasonably be expected to give rise to an investigation of retaliation. *See Pacheco*, 448 F.3d at 787 (affirming summary judgment because court determined as matter of law that EEOC

14

charge did not sufficiently allege, and could not reasonably be expected to give rise to investigation of, particular discrimination claim); *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 144 (Tex. App.—Fort Worth 2000, pet. denied) (same).

Second, while Poindexter's May 2001 letters may have initiated Poindexter's first charge with the EEOC, the verified form that Poindexter filed on June 8, 2001 perfected that charge. *See* Labor Code § 21.201. Poindexter cites no authority, nor are we aware of any, indicating that a later, separate charge relates back to an earlier, perfected charge in its pre-perfected form. This is not what the relation-back statute comprehends. See Labor Code § 21.201(f) (amendment relates back to filing date of earlier version of same complaint).

Finally, Poindexter argues that she intended her first charge to include a retaliation claim, so the EEOC is to blame for its failure to include one and equity precludes her from suffering the consequences. This argument might succeed if the record showed that Poindexter actually communicated a retaliation theory to the EEOC in May or June of 2001, but, as already discussed, it does not. The record does show, on the other hand, that Poindexter verified her June 8, 2001 charge. Poindexter therefore knew (and should have protested, if appropriate) the charge's contents long before she reviewed her EEOC file in mid-2002.

In sum, the undisputed evidence shows as a matter of law that Poindexter did not timely file a retaliation charge with the EEOC. Thus, the trial court lacked jurisdiction over Poindexter's retaliation claim.

*Poindexter's Disparate-Impact Claim*

Poindexter concedes that neither her June 8, 2001 nor her May 7, 2002 EEOC charge alleges disparate impact.[11] Instead, she contends that her letters of May 2, May 23, and October 5, 2001 show that she intended to allege disparate impact. We disagree.

Poindexter bases her argument on the facts that (1) her letters appear to invoke statistical data, and (2) the EEOC sought statistical data as part of its investigation. While it is true that disparate-impact analyses almost always turn on statistical data, it does not follow that all analyses incorporating statistical data necessarily concern disparate impact. In many instances, statistical data support disparate-treatment analyses. *See Smith v. City of Jackson*, 351 F.3d 183, 193 n.12 (5th Cir. 2003) (noting that "statistical evidence is quite useful in disparate treatment cases"), *aff'd*, 544 U.S. 228 (2005). In fact, that is what occurred here: the EEOC's internal Investigation Plan demonstrates that the EEOC requested statistical data from the University to investigate Poindexter's disparate-treatment claim.

Perhaps partly because naked statistical data are ambiguous, a would-be disparate-impact plaintiff must also allege that her employer uses "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Pacheco*, 448 F.3d at 791 (citing *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982)). Failure to allege these elements in an

---

[11] A disparate-impact claim "addresses employment practices or policies that are facially neutral in their treatment of . . . protected groups, but, in fact, have a disproportionately adverse effect on such a protected group. In disparate-impact cases, proof or finding of discriminatory motive is not required." *Pacheco*, 448 F.3d at 787 (citing *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982)).

16

administrative charge bars a plaintiff from bringing a disparate-impact claim in a court of law. *See id.* at 791-92.

*Pacheco* is highly instructive. The plaintiff in that case appealed a summary judgment dismissing his disparate-impact claim for failure to exhaust administrative remedies. In reviewing the scope of the charge that Pacheco had filed with the EEOC, the Fifth Circuit held that the charge was too narrow to exhaust a claim of disparate impact. *Id.* at 792. First, the court noted the proper scope of review of administrative charges: "the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Id.* After detailed factual analysis of Pacheco's administrative charge, the court summarized its reasons for holding, as a matter of law, that the charge was too narrow to support a disparate-impact claim: "a disparate-impact investigation could not reasonably have been expected to grow out of Pacheco's administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only." *Id.* at 792. The court affirmed the summary judgment.

In the present case, both of Poindexter's administrative charges are subject to the same critique. Poindexter's June 8, 2001 charge facially alleges only disparate treatment, identifies no neutral employment policy, and complains only of past incidents of disparate treatment. Similarly, even if it were not time-barred, Poindexter's May 7, 2002 charge facially alleges only retaliation, identifies no neutral employment policy, and complains only of past incidents of

17

retaliation (and possibly disparate treatment). Thus, Poindexter did not exhaust her administrative remedies vis-à-vis her disparate-impact claim, depriving the trial court of jurisdiction over that claim.

Nor do Poindexter's May and October 2001 letters to the EEOC save her disparat-impact claim. The October correspondence, filed almost four months after Poindexter's perfected charge, is irrelevant to determining whether Poindexter's charge alleged disparate impact. *See id.* (scope of charge turns on contents of charge itself). Furthermore, both the May and October correspondence recite statistics (*e.g.*, promotion rates for black professors, the percentage of University professors who are black) equally consistent with disparate-treatment and disparate-impact analyses. If Poindexter intended the statistics to serve as a basis for the latter, she needed to identify a facially neutral University policy that disproportionately harmed black employees. *See id.* at 791. She did not.

Accordingly, we hold that, as a matter of law, Poindexter's communication with the EEOC did not satisfy the legal requirements for exhausting a disparate-impact charge. The trial court therefore lacked subject-matter jurisdiction over Poindexter's disparate-impact claim.

***Employment Discrimination Claims Under Chapter 106***

This Court has previously held that chapter 106 of the Texas Civil Practice and Remedies Code does not comprehend employment discrimination claims. *See Wright v. Texas Comm'n on Human Rights*, No. 03-03-00710-CV, 2005 Tex. App. LEXIS 5904 (Tex. App.—Austin July 27, 2005, pet. dism'd) (mem. op.). In so holding, we first examined the legislative history of chapter 106. *Id.* at *7-8. We noted that when the legislature enacted the Texas Commission on

18

Human Rights Act (TCHRA) in 1983,[12] it simultaneously repealed the employment discrimination language in Chapter 106's predecessor and moved that language into TCHRA. *See id.* at *7 (citing, inter alia, Act of June 25, 1983, 68th Leg., 1st C.S., ch. 7, §§ 5.01 (including language in TCHRA that prohibits discriminatory employment practices), 10.02 (repealing sections from chapter 106's predecessor containing nearly identical language regarding discriminatory hiring and firing of employees), 1983 Tex. Gen. Laws 37, 45, 56-57). What remains of chapter 106 does not concern employment. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 106.001-.004 (West 2008).

We then examined the plain meaning of chapter 106 and concluded that it did not comprehend employment discrimination. *Wright*, 2005 Tex. App. LEXIS 5904, at *7-8. Poindexter argues that, to the contrary, 106.001(a)(5)'s prohibition on withholding a "benefit" includes employment benefits, but the Fifth Circuit has rejected this argument as leading to incongruous results. *See Duke v. University of Texas at El Paso*, 663 F.2d 522, 525-26 (5th Cir. 1981) (holding that interpreting chapter 106's predecessor to cover employment benefits would violate legislature's intent and render superfluous other statutory provisions).

Finally, we noted that we must strictly construe penal statutes like chapter 106. *Wright*, 2005 Tex. App. LEXIS 5904, at *8 (citing *Duke*, 663 F.2d at 526-27; Tex. Civ. Prac. & Rem. Code Ann. § 106.003 (violation of section 106.001 is misdemeanor punishable by fine, confinement, or both)).

---

[12] The relevant portions of TCHRA later became chapter 21 of the Texas Labor Code. *See Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 377 (Tex. 2004).

Our reasoning in *Wright* was sound; accordingly, we here "follow the longstanding and proper reading of [chapter 106], which excludes a cause of action for employment-related discrimination." *Id*. We hold that the trial court lacked jurisdiction to hear employment discrimination claims under that chapter.

## CONCLUSION

The undisputed evidence in this case relevant to jurisdiction conclusively shows that the trial court lacked jurisdiction over Poindexter's retaliation, disparate-impact, and chapter 106 claims. We therefore reverse the portion of the trial court's order denying the University's plea to the jurisdiction as to retaliation, disparate impact, and chapter 106, and we render judgment dismissing these claims for lack of jurisdiction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Patterson and Puryear
   Concurring and Dissenting Opinion by Justice Patterson

Reversed and Dismissed

Filed: July 3, 2009

20